STATE OF TEXAS EX REL. BARRON ET AL. v. J. B. WOFFORD ET AL.

Decided March 29, 1897.

1. Towns and Villages—Incorporation for School Purposes.

Rev. Stats. (1879), art. 541a (amendment by Act of April 6, 1881), permitting towns and villages to incorporate for free school purposes, applies only to towns and villages not incorporated, and does not authorize a double incorporation, for municipal and for school purposes, within the same territory. (Construing foregoing act, with Rev. Stats., [1879, arts. 3781, 3782] arts. 4004, 4005.)   (Pp. 518, 519.)

2. Same.

The incorporation for school purposes in 1892, under Rev. Stats. (1879), art. 541a, of a territory four miles square, including a town one mile square theretofore legally incorporated, was invalid, though no town government had been administered nor officers elected since 1883.   (Pp. 518, 519.)

3. Incorporating Towns, Etc.—Designation of Limits.

.It would seem to be essential to the validity of an act incorporating a town or city, the boundaries of which are not already designated, that the limits of the municipality should be defined.   (P. 517.)

4. Same.

It seems that a special act incorporating a town, which describes the limits as "one-half mile each way, north, south, east and west, from the center of the public square," should be construed as embracing one mile square, the sides running at right angles with the lines designated in the act.   (P. 517.)

5. Same.

If such description was doubtful, a subsequent special act incorporating the town and providing that the "limits of said corporation shall extend to the present limits of said town or one mile square" removed all doubt as to the territory incorporated; the presumption being that the Legislature ascertained the facts with reference to the town and that it had limits, actually well defined, which embraced one mile square.   (Pp. 517, 518.)

6. Quo Warranto—No Laches Imputed to State.

An action in the nature of a writ of quo warranto, to amend the assumption of authority of a municipal or quasi-municipal nature (in this case the action of defendants as trustees of a district, under an invalid incorporation for school purposes) is a suit by the State, to which the rule that no time runs against the sovereign applies, and laches can not be imputed to the   State in such proceeding.   (P. 520.)

QUESTIONS CERTIFIED from Court of Civil Appeals, Fifth District, in an appeal from Henderson County.

*D. A. Nunn,* District Attorney, and *Richardson, Watkins & Miller,* for relators, appellants.—There cannot be at the same time, within the same territory, two distinct corporations, exercising like powers, jurisdictions or privileges. State v. Dunson, 71 Texas, 65; Buford v. State, 72 Texas, 182; Harness v. State, 76 Texas, 566; Grant, Corporations, 18; Dillon, Municipal Corporations, 84; Taylor v. Fort Wayne, 47 Ind., 281; King v. Pasmore, 8 American and English Corp. Cases, 636-643.

Only unincorporated towns and villages have a right under Art. 540a, Act of Legislature, 1891, to incorporate for free school purposes. Any existing corporation can only assume exclusive control of its public schools under art. 3781-2, in the way and manner therein provided. Sayles Statutes, art. 540a, 340, 340a; Rev. Stats., arts. 3781, 3782; State v. Dunston, 71 Texas, 65; Harness v. State, 76 Texas, 566; State v. Edison, 76 Texas, 302.

The boundaries set out in each of the several acts of incorporation are both certain and clear, and can be exactly ascertained and settled by the language used. Buford v. State, 72 Texas, 182; State v. Hoff, 29 S. W. Rep., 672.

*Faulk & Faulk,* for Wofford and others, defendants, appellees.—Where a municipal corporation has been created, but is not in operation and has been abandoned for many years, and there is no effort or desire to take charge of the public free school, then a school corporation for free school purposes only may be created by the inhabitants of the same and over a greater territory than that covered by said municipal corporation, provided it does not exceed 4 miles square. Gen. Laws, 18th Leg., p. 114; Amended by Act, 1891, p. 79; Amended by Act, 1893, p. 175; Rev. Stats., 1895, arts. 616a, 617b, 4004, 4005, 4006, 4007; Acts, 1876, p. 209, secs. 55, 56; Acts, 1879, p. 76; Acts, 1889, p. 128; 15 Am. & Eng. Encycl. Law, 1007, sec. 5; State v. Town of Winter Park, 25 Fla., 371.

Every municipal corporation must have its territorial limits, well defined, and clearly and definitely bounded. 15 Am. and Eng. Encycl. Law, 1007; 1 Dillon, Mun. Cor., 211, sec. 184; 29 Fla., 128; Furrh v. State, 24 S. W. Rep., 1126; State v. Allegree, 22 S. W. Rep., 289; Sayles' Civil Statutes, arts. 507, 513.

When the State recognizes the existence of a corporation a long number of years and treats with it, such as paying it public money, and recognizes its authority to deal in a certain capacity for the benefit of the public, and such corporation is so recognized and treated by the public generally, the State will be estopped, on the ground of laches, from attacking its validity, for any reason. Especially so if it impairs the rights of third parties who have in good faith, dealt with it. State v. Town of Westport, 22 S. W. Rep., 888; Jameson v. People, 63 Am. Dec., 304; State v. Leatherman, 38 Ark., 81.

GAINES, CHIEF JUSTICE.—The following statement and question have been certified to us by the Court of Civil Appeals for the Fifth Supreme Judicial District:

"In 1850, one hundred and sixty acres of land was donated to the County of Henderson for the purpose of establishing thereon the county seat. The 160 acres was in the form of a square lying east and west by north and south, and the County Commissioners Court of the county had it surveyed and platted into lots, blocks, streets and alleys, and laid out and designated the same by names and numbers, and established thereon the town of Athens. A public square was laid off in the center of the tract, a court house erected in the center thereof, and the streets ran east and west by north and south.

"September 1, 1856, the said town of Athens was incorporated by special Act of the Legislature. The Act declared the limits of the corporation to be 'one-half mile each way, north, south, east and west from the center of the public square.'

"October 19, 1866, a special Act of the Legislature was passed incorporating the said town of Athens. This act described the territory incorporated in these words: the 'limits of said corporation shall extend to the present limits of said town or one mile square.' Under each of these charters town officials were selected and the municipal government carried on for a while.

"February 15, 1881, after due notice, an election was held for the purpose of incorporating the town under the general incorporation laws of the State. The territory thus sought to be incorporated was described as 'one square mile, of which the court house in Athens shall be the center.' The proposition to thus incorporate was carried by the election, and officers were elected and the city government carried on and operated under the general incorporation act until 1883. Since 1883 no town government has been administered, no election and qualification of officers being had.

"In 1891, the citizens residing in the territory of four miles square, including the town of Athens, held an election for the purpose of incorporating such territory for school purposes only. The election, in so far as the procedure be concerned, was regular, and resulted in favor of the proposition to incorporate the said four miles square for school purposes only. Officers were regularly elected, qualified, and proceeded promptly to operate the new corporation. They took charge of the public's school interests in said territory, held elections to decide whether special taxes should be levied to supplement the State public school fund and build schoolhouses. These elections resulted in favor of the special taxes, they were levied and collected, bonds issued, schoolhouses built, teachers employed and the public school interests were managed and controlled by them in all respects. Elections have been held regularly since, and the officers elected have continuously had charge and management of all public school matters in said territory, and have exclusively controlled same to the time of the institution of this suit, to-wit, February, 1896.

"QUESTION I.  Was there any legal authority for incorporating, for school purposes only, the territory of four miles square, embracing the town of Athens, as was attempted in 1891, under the conditions herein above related?

"QUESTION II.  Under the facts stated, has the State been guilty of such laches as to be precluded from questioning the legal existence of such school corporation by proceedings of quo warranto?"

The solution of the first question depends upon the determination of two others:   1.  Was the town of Athens lawfully incorporated at the time of the attempt to incorporate for school purposes?  and 2.  If so, had the people of the territory embraced within the attempted school corporation the power under the statutes to incorporate for that purpose only?

We incline to the opinion, that the town of Athens was duly incorporated by the special Act of September 1, 1856.  It would seem to be essential to the validity of an act incorporating a town or city, the boundaries of which are not already shown by the aggregation of houses, or designated in some other mode, that the limits of the municipality should be in some manner defined.   The description of the territory incorporated in the special act in question is not so clear as to put it beyond question. But in construing an act of this character, the rule which governs the construction of statutes in general must be applied.   It is the duty of the courts to ascertain if possible the intent of the Legislature, and when so ascertained to give it effect.   Mathematically the description is incomplete.   It merely fixes four points in the town boundaries and does not expressly direct how the lines were to run, which were to connect these points.   But it was not meant that the town should be embraced within the circumference of a circle of which the middle point of the public square should be the center and one-half mile should be the radius; for in that case the designation of four points only in the boundary, every point of which would have been equi-distant from the center, would have been absurd.   Again, it was not intended that the four points designated should be connected by direct lines running from one to the other, for then the limits would not have extended one-half mile from the center of the public square.   Except as to the points designated, every part of the boundaries would have been within less than the half of a mile of the center.   What was meant, we think, was that the town boundaries should be right lines running to the cardinal points of the compass, and that the middle point of each line should be one-half mile from the center mentioned;  in other words, that the limits of the town should be a square, the sides of which should respectively run a half mile distant from the center of the public square, and at right angles to the lines which are designated in the act.   But, we think that if there be a doubt about the construction of the first act, there is none as to that of October 19, 1866.   The territory over which the corporation is there extended is "the present" (meaning the then existing) "limits of said town, or one mile square."   In construing this act, we must presume that the Legis-

lature ascertained the facts with reference to the town, and that it had limits actually well defined, which embraced "one mile square." It is also to be presumed, that these limits had been fixed in accordance with the previous charter. If the former act had added the words "embracing one mile square," all doubt would have been removed, for the reason, that the only square mile which would have corresponded with the description would have been that constructed by running lines perpendicular to the four lines which radiated from the center of the public square.

We conclude that at least the second act in question was valid, and that it is unimportant whether the attempt in 1881 to incorporate under the general law was effectual or not. If not, the special charter of 1866 remained in force. A municipal corporation continues to exist until dissolved by legislative act or judgment of dissolution; and hence, when the election was held in 1891 to incorporate the school district, Athens was an incorporated town. State v. Dunson, 71 Texas, 65.

Athens being in 1891 an incorporated town, could the inhabitants of the district embracing the town incorporate for school purposes? The first section of the act which first authorized towns or villages to incorporate for public school purposes only, reads as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas, That chapter 11, title 17, of the Revised Statutes of the State of Texas, be amended by the addition of the following articles:

"Article 541a. Towns and villages authorized to incorporate under this chapter, or having two hundred inhabitants or over, not desiring to incorporate for municipal purposes, may incorporate for free school purposes only, and when so desiring, an election may be held under the provisions of this title and chapter, and if at said election a majority of the votes cast be in favor of the corporation, it shall be the duty of the county judge to make return thereof and cause a record of the result of such election to be made the same as is provided by articles 512 and 513 of this chapter, upon which entry being made such town or village shall be regarded as duly incorporated for the purpose of establishing and maintaining a free school therein, and shall upon notice to the State board of education by the board of trustees hereinafter provided for, receive such pro rata share of the available school fund as its scholastic population may entitle it to." (1 Sayles Ann. St., 541a.) The construction of this section is not quite clear, but we think it was intended to apply to such towns and villages as were not incorporated. The language "not desiring to incorporate for municipal purposes" is not applicable to such as had been incorporated either by special charter or by compliance with the general law. The construction becomes more evident by reason of the recitals in the second section, which was intended for the purpose of suspending the rules and putting the statute into effect from its passage. They are as follows: "There being many unincorporated towns and villages in the State that desire to incorporate for free school purposes only, and it being important that such incorporations should be duly organized and ready for taking charge of their schools

before the commencement of the next scholastic year, thereby creating an emergency that this act take effect from and after its passage, and it is so enacted," etc.    This language evinces that the Legislature had in mind unincorporated towns and villages only.

Besides it appears from the first clause of the first section already quoted, that the act was intended as an addition to chapter 11 of title 17 of the Revised Statutes, and it nowhere expressly repeals any of the provisions of any of the existing laws.    At that time and now the Revised Statutes contained the following articles:

"All cities and towns which have heretofore under the Act of May 2, 1875, or any subsequent law, assumed control of the public free schools within their limits, and have continued to exercise the same until the present time, or may hereafter determine so to do by a majority vote of the property taxpayers of said city or town voting at an election held for that purpose, may have exclusive control of the public free schools within their limits."    (Art. 3781, Rev. Stats., 1879; art. 4004, Rev. Stats., 1895.)

"Any city or town in this State may acquire the exclusive control of the public free schools within its limits."    (Art. 3782, Rev. Stats., 1879; art. 4005, Rev. Stats., 1895.)

At the time the act in question was passed, many towns had doubtless acquired control of their public free schools under the articles quoted; and hence if the act applied to such as had been incorporated, its effect would be to empower the inhabitants of the territory embracing such a town either to take away its control over its public schools, or to establish a dual local government over the same matter in the same territory. This latter certainly was not intended.    Again, if a school incorporation could be established over territory embracing a town already incorporated, the effect would be to take away the power of such towns to control public schools given by the articles just quoted.    If the act in question be construed as applying to such towns as were not incorporated, then there is no conflict.    Statutes should be so contrued if possible as to make them harmonious.

Besides, we cannot conceive that the Legislature would have authorized corporations for school purposes to be established over a town which had already incorporated and assumed jurisdiction of its public schools, without making some provision for the disposition of the school property, and for the payment of such obligations as may have been incurred by the town on account of the maintenance of the schools.    There is nothing of the kind in the act.    If it had been contemplated that the power of a town over its schools might be superseded by the organization of another corporation for school purposes only, some provision would have been made for the succession, and for an adjustment of the rights and obligations affected by the change; and for this reason also, we think that the act was not intended to apply to towns already incorporated.

The act under consideration was amended by an Act approved April 10,

1891, but in no particular which affects the question. Besides, it does not appear from the certificate whether attempt to incorporate the school district occurred before or after the latter act took effect.

Our conclusion is, that the first question certified should be answered in the negative.

2. The grant of powers to a municipal or quasi municipal corporation is but a devolution upon the municipality of so much of the reserved power of the State as its Legislature deems proper to delegate in order to subserve the interests of the public. A usurpation of such powers by a body of men is a wrong to the State; and an action in the nature of a writ of quo warranto to annul the assumption of the authority is a suit by the State. The rule that no time runs against the sovereign, applies; and therefore laches cannot be imputed to the State. (Rhode Island v. Turnpike Co., 8 R. I., 521; Rex v. Wordroper, 4 Burr, 1963.)

We therefore answer the second question certified in the negative also.