

# THE ATTORNEY GENERAL

## OF TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable T. M. Trimble, First Assistant,
State Superintendent of Public Instruction,
Austin, Texas.

Dear Sir:

Opinion No. 0-7252
Re: City Charter conflict with stat-
utes as to term of school trust-
ees and authority of trustees to
control school property.

We are in receipt of your letter of May 27, 1946, in which
you submit the following questions to this department for our opinion:

"1. Are we correct in assuming that trustees of the
Vernon Independent School District shall serve
for three year terms?

2. Does the City Charter provision which seeks to
limit the tenure to two consecutive terms total-
ing four years have any restrictive power in the
face of the provisions of the State Law?

3. Can the City Charter be interpreted to prevent a
member from serving more than two consecutive
three year terms if it cannot restrict the tenure to
a total of four years?

4. Article 2773 provides for the sale of school prop-
erty by the board of Trustees and the investment
of the money in more convenient School property.
Does this give the Trustees the legal right to buy
property needed for school purposes?

5. If it should be necessary for the proper authority
to file condemnation proceedings or suits to pur-
chase property required for school sites, would
such proceedings be instituted by the School Trust-
ees or the City Commission?

6. We have voted bonds for the construction of build-
ings, the acquisition of sites, etc., the bonds have
been sold and the money is in cash or securities
for the Building Fund of the School District. Is it
the responsibility, solely, of the Board of Trustees
to enter into contracts for the completion of said
building programs?"

Article 2774a (VACS) provides in part as follows:

"Section 1. Towns and cities which have heretofore chosen their trustees by appointment of the City Council or Board of Alderman, shall be authorized to continue to choose their trustees in this manner; that is, by the appointment by the Board of Alderman of said city or town; provided, that seven trustees shall be appointed, three of whom shall serve for one year, and two for two years and two for three years, and each year thereafter, three trustees or two trustees shall be appointed for a term of three years, . . . "

By virtue of Article 2771, school districts under the control of incorporated towns or cities are subject to the general laws; therefore, Article 2774a is applicable to the Vernon Independent School District.

The charter of the City of Vernon, as adopted in 1916, provides in Section 2, Article VI thereof that each of seven trustees of the school board shall be appointed by the City Commission to serve for a term of two (2) years.

Article 2774, as enacted by the Legislature in 1905, provided for two (2) year terms for school trustees. The Forty-First Legislature, in 1930, enacted what is now known as Article 2774a, providing that Board of Trustees of municipally controlled school districts shall be appointed for a term of three (3) years, by virtue of a Constitutional Amendment adopted in 1929 (Sec. 16, Art. VII). Section 7, which is the repealing clause of Article 2774a, provided that:

"All laws and parts of laws, both general and special, in conflict with the provisions of this Act are hereby repealed."

Considering the statutory provision above-quoted, you are advised that your first question should be answered in the affirmative; that the trustees of the Vernon Independent School District should serve for three (3) year terms, and that the charter provisions of the City of Vernon in conflict with Article 2774a are invalid.

The above statement also applies to your second question; namely, the further provision of the Vernon Charter in Section 2 of Article VI thereof limiting the tenure of school trustees to four (4) consecutive years until the expiration of two years from and after former service as school trustee, being inconsistent with the provision of Article 2774a, is invalid.

Your question as to whether the Vernon Charter can be interpreted to prevent a trustee from serving more than two consecutive three (3) year terms must be decided first upon the basis of whether such interpretation is a fair construction of the charter, and secondly, whether

such interpretation is consistent with the general law as expressed in Article 2774a and other pertinent statutes.

The second paragraph of Section 2, Article VI of the Charter of the City of Vernon reads as follows:

"At the first meeting of the Commissioners herein provided for, or as soon thereafter as practicable, they shall appoint seven school trustees and provide that four of the said trustees shall serve for two years and three of the said trustees shall serve for one year; provided that no school trustee who has heretofore served or who may hereafter serve as such for a period of four consecutive years, shall be eligible to reappointment, until the expiration of two years from and after his former service as school trustee."

According to 30 Tex. Juris. page 53:

"In interpreting (a municipal charter) it is the duty of the court to ascertain, if possible, the intent, and, when so ascertained, to give it effect. State ex rel Barron v. Wofford 90 Tex. 514, 39 S.W. 921. The language must be construed as written, unless it is apparent that this would defeat the intent. If possible, the charter should be so construed as to avoid absurd and unjust consequences, and so as to uphold rather than nulify it. A construction should be adopted which comports with the general public policy of the State, rather than one which would outrage such policy and destroy its ideals of Government."

Plainly, the intention of the people, as expressed in the subject charter provision, was to limit the tenure of school trustees to two (2) terms, each of such terms being for two (2) years, (such two year terms having been in accordance with constitutional and statutory provisions in force at the time this section of the Vernon Charter was adopted, prior to 1928). As stated above, with the change in the statutory provision regarding the term of school trustees, the limitation of the Vernon Charter in that respect is no longer valid. However, a fair and reasonable construction of such charter, in our opinion, should not defeat the intent of the people of the City of Vernon to limit school trustees to two consecutive terms of office, unless the expression of such intent is inconsistent with the applicable general laws of the State.

Section 32, Article 1175 (VACS 1925) gives to "home rule" cities, such as Vernon, the power to provide for the establishment of public schools and to have "exclusive control" over same and to provide such regulations and rules governing the management of same as may be deemed advisable. In the case of Temple Independent School District v. Proctor (Civ.App.) 97 S.W.(2) 1047, the court said:

"We think the language of subdivision 32 of Article 1175 (VACS 1925) . . . carries with it the necessary implication that such 'exclusive control' means control to the exclusion of the control exercised by the county or state over other types of independent school districts authorized and provided for by the school laws; and does not mean that by such 'exclusive control' such districts are not amenable to the general school laws applicable to such districts. To hold otherwise would be to ignore the very limitation in the Constitution itself that the charters of home rule cities must conform with the Constitution and the general laws of the State." (Emphasis ours.)

30 Tex. Juris. page 180 holds as follows:

"As long as the State does not, in its Constitution or by general statute, cover any field of the activities of cities, any given city is at liberty to act for itself. But where the State has adopted a general law and applied it to all cities of a certain class, no city of that class may enact legislation in conflict therewith. (City of Beaumont v. Fall, 291 S.W. 202). Both the home rule amendment to the Constitution and the statute provide that no home rule charter or ordinance passed under the same shall contain any provision inconsistent with the general laws of the State. Such powers as are not granted to the qualified voters of cities by the amendment are reserved to the Legislature; and matters of regulation or control not so vested in the voters are proper subjects of legislative action and control. The amendment renders invalid provisions of existing charters which are inconsistent with subsequently enacted general laws."

The Legislature having applied a general law (Article 2774a) to all cities of the class of Vernon, regarding the number, method of selection, and term of office of school trustees, it is the opinion of this department that the City of Vernon has no authority to limit the tenure of office of school trustees to two terms, since such legislation would be inconsistent with the provisions of Art. 2774a, and therefore your third question is answered in the negative.

Your fourth question relative to the power of the school trustees to buy property needed for school purposes is not, as you suggest, governed by Art. 2773, which relates solely to the sale of property held in trust by any city or town for public school purposes, and giving to the Board of Trustees of such city or town, authority to sell such property with the consent of the State Board.

This question which you have raised, both directly and by implication, as to the division of authority between the Board of School Trustees and the municipality in school districts which have been assumed by incorporated towns and cities, is answered in the cases of Hamilton v. Bowers, 146 S.W. 629 (Civ.App.), Poteet v. Bridges, 248 S.W. 415 (Civ.App.), and Temple Independent School District v. Proctor, 97 S.W. 2 1047 (Civ.App.).

In the case of Hamilton v. Bowers (supra) the Board of School Trustees for the city of Palestine brought suit against the mayor and city commissioners to compel them to turn over to the said trustees certain funds, the proceeds from the sale of bonds issued by the said city to provide funds for the erection of a new schoolhouse. The mayor and the city commissioners were preparing to expend said funds for the purposes for which they were provided, when the trustees, claiming that they had the exclusive right to the possession, control and disposition of the funds, brought suit to obtain such funds.

In its opinion, the court, citing provisions of the Public School Act of 1905, (which now appear in V.A.C.S., 1925, as Articles 2768, 2772, 2773, 2801, et al) held as follows:

"These provisions of the statute expressly give to the appellants the exclusive control and management of the public free schools in the City of Palestine and places in them, 'the title to all houses, lands and other property owned, held, set apart or in any way dedicated to the use and benefit of the public free schools of said city.' We cannot, however, agree with appellants that the sections of the act above set out give them the exclusive right to the possession of the funds in question, or the exclusive right to contract, for the construction of new schoolhouses, or the repair of those now in use, and take from the city authorities the right to use this money in the construction of a new schoolhouse and the repair of those now in use. Section 147, above quoted, expressly authorizes the city to provide for building sites and buildings for its public free schools; and we think when, as in this case, the city has issued and sold its bonds, and thereby created a fund for the construction of a schoolhouse, it is authorized to use such funds for the purpose for which they were created, and is not required to turn them over to the school trustees. (Emphasis ours).

"As before said, there is no express provision of the statute which imposes such duty or obligation upon the city; and such obligation does not arise by necessary implication from the general purpose and intent of the act, considered as a whole. The right of the exclusive control and management of the public free schools and the vestiture of the legal title to all property owned by or dedicated to the use and benefit of such schools do not necessarily carry with them the right

to the possession and the disposition of all funds created by
the city for school purposes.

"It is, we think significant that section 137 of the act,
above mentioned, which directs that 'all moneys and funds
arising from the assessment and collection of any special
taxes in such city or town for public free school purposes
shall be by the assessor and collector, or other proper of-
ficer of such city or town whose duty it is to collect the tax-
es, turned over directly to the treasurer of the board of
trustees,' gives no such direction as to moneys or funds
procured by the city by the sale of bonds issued and sold
by it under the authority given it under section 147, before
quoted, to provide for school buildings. If it had been the
legislative intent that all moneys and funds provided by the
city for school purposes should be directly turned over to
the treasurer of the board of trustees, it would not have con-
fined or limited the provisions of section 137 to moneys or
funds arising from the assessment and collection of special
taxes. The moneys derived from special school taxes, which
are only levied for the purpose of procuring funds to meet
the ordinary current expenses of conducting the school, are
properly placed in the hands of the trustees, who have the ex-
clusive management and control of the schools, and should
have at their disposal the funds necessary to meet the con-
tracts of the teachers employed by them, and the other ex-
penses necessarily incurred by them in the management of
the schools; but no such reason exists for giving to the trust-
ees the exclusive right to hold and direct the expenditure of
money provided by the city by the sale of its bonds for the
purpose of building schoolhouses. On the contrary, it seems
to us that the city authorities, upon whom the duty to have
constructed all public works and public buildings for the city
is imposed by the city charter, which contains numerous pro-
visions safeguarding and protecting the rights of the public in
all contracts for public works and buildings, are the proper public
agents for the expenditure of funds of this character."

In the case of Poteet v. Bridges (supra) the city of West,
which had assumed control of the public free schools within its limits,
administering the same through a Board of School Trustees, had issued
bonds for the purpose of erecting a high school building. The bonds were
sold and the money placed in the City Treasury. The city authorities
contracted for a lot upon which to erect said building. Thereupon, the
Board of Trustees and certain taxpayers objected to the site selected for
such building, and brought this suit to enjoin the city authorities from
purchasing said lot and from erecting said building, alleging that the money
obtained from the sale of said bonds should be turned over to the Board of
Trustees of said independent school district, for the reason that they alone

were authorized to select the site for such building, and to contract for the erection, thereof. The trustees attempted to distinguish these facts from the prior case of Hamilton v. Bowers (supra) on the grounds that the city of West had extended its boundaries for school purposes only, which circumstances did not appear in the Bowers case.

In upholding the authority of the municipality, the court held as follows:

"A city, by assuming control of the public schools within its limits, does not thereby create a public school district, separate from itself, but itself becomes a public school district. It becoming such, it does not cease to be a municipal corporation, but adds an additional corporate function. This added function, in so far as it relates to the management and control of the schools, is exercised by a board of school trustees, who are officers of the municipality for that purpose, but the power to select sites for school buildings and the erection of such buildings is, as appears from . . . the decision in Bowers v. Hamilton, supra, vested in the municipal authorities. (Emphasis ours) . . .

" . . . When the lines of a city or town are extended in the manner provided by law, the territory included in such extension, for the purpose for which such extension was made, is thereby included within such corporate limits, and for such purpose becomes a part thereof. Such town or city still remains in control of its public schools 'within its limits,' and such added territory is, for school purposes, within its limits. . . .

"The title to school property is vested in the boards of school trustees, as is also the use and control of school buildings after they are erected, (Art 2772, 2773, R.C.S. 1925), but they have no authority to raise for such purpose money by either taxation or the sale of bonds. In other words, the municipality provides the schoolhouses and the funds, in addition to those provided by the state, and the board of school trustees run the schools. (Emphasis ours) . . .

"We hold that the municipal authorities of the city of West, and not the board of school trustees of said city, have the right to select the site for the proposed school building, and to contract for the erection of same." . . .

In the case of Temple Independent School District vs. Proctor (supra) the other side of this question was presented. The City Commissioners of Temple, acting under a provision of the city charter, passed an order rescinding the action of the Board of School Trustees of the Temple Independent School District (which had been assumed by the city) in regard

to the appointment of Proctor as superintendent. The court held that insofar "as the city charter relating to the control and management of the public schools is concerned, its provisions should be tested by the provisions of the general school laws (title 49 R.C.S.) in force at the time," such laws giving to the Board of School Trustees "the exclusive power to manage and govern said schools. . . . Insofar, therefore, as the provisions of the Temple Charter undertook to give the city commissioners veto power of the acts of the Board of Trustees in their government and exclusive control of the public schools of the district it contravenes the provision of the Constitution, because it is contrary to the general law of the state in force at the time, and is therefore void."

Referring to the charter of the City of Vernon (as amended October 16, 1945), Section 1 of Article VI thereof has the following provision:

" . . . The City, in its capacity as an independent school district, is authorized to issue negotiable bonds for the erection, equipment, repair and improvements of public free school buildings, the acquisition of sites therefor, and for other purposes for which other independent school districts are authorized by general law to issue bonds, and for the purpose of refunding any such bonds. Said bonds shall be authorized and issued in the manner prescribed by general law for the issuance of bonds by other independent school districts, except that the duties imposed by the general law upon the Board of Trustees shall be performed by the City Commission, the City Commission shall levy the taxes for the payment of said bonds and the interest thereon, and said bonds shall be signed by the Mayor and attested by the City Secretary. . . "

In accordance with the above-quoted statutory, judicial and charter provisions, it is the opinion of this department that your fourth question should be answered in the negative; that is, the School Trustees do not have the right to buy property needed for school purposes with the proceeds derived from the sale of school bonds, but that the authority for such purchase, including the acquisition of sites, erection of buildings, or the purchase of such buildings, is vested in the City Commission of Vernon. It will be noted, however, as set forth in the above cited cases, that so soon as school property is purchased by the City Commission, title to such property is vested in the Board of School Trustees who then have the exclusive control and management of the public schools and the further power under Art. 2773 to sell such property subject to approval of the State Board of Education.

Your fifth question is necessarily answered, pursuant to the above statement, by holding that "condemnation proceedings" or "suits to purchase property" must be instituted by the City Commission and not by the Board of School Trustees.

Your sixth question, like your fourth, falling within the purview of Hamilton v. Bowers and Poteet v. Bridges (supra), is answered by stating that the funds realized from the sale of the school bonds voted by the city should be under the exclusive control of the City Commission to be expended by them for the purpose for which such bonds were voted, and that the said City Commission has the sole authority to enter into contracts for the above purpose, and not the Board of School Trustees.

We believe the above statements fully answer the questions you have presented.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ W. N. Blanton, Jr.
W. N. Blanton, Jr.
Assistant

WNB/JMc/cm

APPROVED JUL 5, 1946

/s/ CARLOS ASHLEY
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
Opinion Committee

By /s/ BWB
Chairman