UPSHUR–RURAL ELECTRIC COOPERATIVE CORPORATION, Appellant,

v.

STATE of Texas ex rel. SOUTHWESTERN ELECTRIC POWER COMPANY, Appellees.

No. 11252.

Court of Civil Appeals of Texas.

Austin.

July 29, 1964.

Rehearing Denied Aug. 19, 1964.

Powell, Rauhut, McGinnis, Reavley & Lochridge, Herring & Werkenthin, Austin, Hollie G. McClain, Gilmer, R. Dean Moorhead, Austin, for appellant.

Clark, Thomas, Harris, Denius & Winters, Austin, Arnold & Arnold, Texarkana, Ark., Baker, Botts, Shepherd & Coates, William R. Brown, Charles G. Thrash, Jr., Houston, for appellees.

PHILLIPS, Justice.

This is a proceeding in quo warranto wherein the State of Texas, on relation of Southwestern Electric Power Company, seeks to prevent Upshur-Rural Electric Cooperative Corporation from: (1) Constructing and operating its own plant for generating the electricity which it furnishes to its members. Upshur presently purchases all of its electricity from the Relator Southwestern Electric Power Company under a contract which will expire on January 11, 1965; and (2) from entering into a proposed agreement with the Southwestern Power Administration (SPA) [1] whereby Upshur's generating plant would interconnect with SPA's system thereby enabling Upshur among other things, to sell or dispose of its electric energy to SPA.

The Trial Court held against Upshur on all grounds and granted an injunction which

1. The Southwestern Power Administration (SPA) is an Agency of the Federal Government. It is to be distinguished from the Relator Southwestern Electric Power Company, which is a private utility that operates in East Texas and elsewhere.

prevents Upshur from constructing the proposed generating plant and from entering into the proposed agreement with SPA.[2] Upshur has duly perfected its appeal to this

2. The Trial Court's judgment is as follows:

"On the 4th day of March, 1964, at a regular term of this Court and pursuant to previous setting, came on to be heard on its merits the above entitled and numbered cause, in which the State of Texas is plaintiff, Southwestern Electric Power Company is relator, and Upshur-Rural Electric Cooperative Corporation is defendant, and all parties by and through their attorneys of record, after having waived trial by jury, announced ready for trial; and the Court having heard the evidence and having considered said evidence, together with all arguments of counsel and trial briefs; and the Court being of the opinion that the law and the facts are with the plaintiff and relator, and against the defendant, it is accordingly:

"ORDERED, ADJUDGED, DECREED AND DECLARED by the Court that the proper construction of Article 1528b, Tex.Rev.Civ.Stat., and other statutes and the common law applicable to the parties under the facts involved in this case, is that:

"(1) Where the members of a cooperative corporation organized under said Article 1528b are receiving through the cooperative electric service provided by central generating stations, as the members of Upshur-Rural Electric Cooperative Corporation and Panola-Harrison Electric Cooperative Corporation now are, such constitutes the receipt of central station service, as that term is used in said Article 1528b, and the construction of an electric generating plant, with related transmission facilities, by such a cooperative to duplicate and displace the function of the central station and related facilities presently providing electric service would be ultra vires and unlawful because, since the corporate purpose of bringing central station service to those who do not have it has been fulfilled, such construction would be beyond the corporate purposes of said cooperative as set forth in said Article 1528b; and

"(2) A cooperative corporation organized under said Article 1528b is authorized by such statute to sell or dispose of electric energy to its members only; by said Article 1528b the class eligible to be, become, or remain members is limited to persons (which term, as defined by the statute, includes any natural person, firm, association, corporations, business trust, partnership, Federal agency, State or political subdivision thereof or any body politic), using or agreeing to use such electric energy at the dwelling, structure, apparatus or point of delivery on which the membership is based; and the sale or disposition of electric energy by such a cooperative corporation would be ultra vires and in violation of said Article 1528b if made: (a) to a non-member, such as Southwestern Power Administration has been admitted to be with respect to membership in the defendant cooperative, or (b) to any 'person' (as above defined), other than another cooperative corporation organized under said Article 1528b, if such 'person' would not use such energy at the dwelling, structure, apparatus or point of delivery on which the membership is based but would resell the same for use by others.

"It is further ORDERED, ADJUDGED AND DECREED by the Court that defendant, Upshur-Rural Electric Cooperative Corporation, its officers, directors and employees, are hereby enjoined from building an electric generating plant, with related transmission facilities, for the purpose of the furnishing of electric energy to its members and to certain members of Panola-Harrison Electric Cooperative Corporation because such members are already receiving central station service under the law as above set forth and declared; and

"It is further ORDERED, ADJUDGED AND DECREED by the Court in accordance with the law as above set forth and declared, that the defendant, Upshur-Rural Electric Cooperative Corporation, its officers, directors and employees, are hereby enjoined from selling or disposing of, or entering into any contract to sell or dispose of, electric energy: (a) to a non-member or (b) to any 'person' (which term includes any natural person, firm, association, corporation, business trust, partnership, Federal agency, State or political subdivision thereof or any body politic), other than another electric cooperative corporation organized under Article 1528b, when such 'person' will not use such energy at the dwelling, structure, apparatus or point of delivery on which the membership is based but will resell the same for use by others; and

"It is further ORDERED, ADJUDGED AND DECREED that the costs of suit be, and the same are here-

Court complaining of the Trial Court's ruling.

We reverse and render that portion of the Trial Court's judgment which prohibits Upshur from constructing and operating its own generating plant; however, we affirm that portion of the judgment that prohibits Upshur from selling or disposing of electricity to non-members.

Upshur-Rural Electric Cooperative Corporation was incorporated in 1937 under the Texas Electric Cooperative Corporation Act, Article 1528b, Vernon's Ann.Civ.St. As of November 30, 1963, it had 2,630 miles of distribution lines and 52 miles of transmission lines, with approximately 11,514 members in 10 counties of Northeast Texas.

Since its incorporation, Upshur has obtained its supply of electric energy from Relator Southwestern Electric Power Company, with the exception of a portion of its requirements during the years 1952–1962 which was purchased from the Southwestern Power Administration but was delivered over Relator's lines. In 1963 Upshur paid Relator $328,937.44 for electric energy that it purchased. Upshur's present purchase contract with Relator will expire on January 11, 1965.

Upshur proposes to build a steam driven turbine generator plant at Ore City on Lake O'the Pines in Upshur County. The plant would have one unit, a turbine and generator of preferred standard design with 33,000 kilowatt nameplate capacity, but with a net capacity output of 38,000 kilowatts.

The proposed generating plant would also serve the Texas requirements (approximately 50%) of the Panola-Harrison Electric Cooperative, Inc., which was incorporated under the same statute and serves 6,104 members in Harrison and Panola Counties of East Texas as well as in the Louisiana Parishes of Caddo and DeSoto. Panola-Harrison also purchases all of its electric energy from Relator, and in 1963 its purchases from Relator amounted to $190,490.73.

In connection with the operation of the proposed generating plant, Upshur has been negotiating for a contract to interconnect the plant with the system of the Southwestern Power Administration. Upshur states in its brief: "No final contract between Upshur and SPA has been entered into, but, unless precluded by the final judgment in this case, Upshur believes that a contract can be made which will be substantially the same as a proposed draft dated November 14, 1963, which is in evidence herein as Plaintiff's Exhibit 7."

■ Upshur has questioned the authority of this Court to ascertain the validity of a contract that is not yet in existence and whose provisions are not definitely known by either quo warranto or declaratory judgment. We overrule this point as the evidence discloses that the building of the generating plant presently contemplated is dependent to some extent on a contract between Upshur and SPA wherein a provision for the sale or disposal of energy to SPA must be contemplated. Consequently, quo warranto is the proper remedy to question Upshur's power to enter into this provision of the contract. State ex rel. Averitt v. Wofford, 90 Tex. 514, 39 S.W. 921; Town of De Kalb v. State, Tex.Civ.App., 71 S.W.2d 299.

The SPA is a marketing agency of the Federal Government which, since 1943, has operated in six states of the Southwest. It markets hydroelectric power to 10 Federal projects and has inter-connection arrangements with some 25 towns and many private power companies.

by, taxed against the defendant, Upshur-Rural Electric Cooperative Corporation, for which let execution issue.
"Defendant, Upshur-Rural Electric Cooperative Corporation, duly excepted in open Court to the above and foregoing ruling and judgment and gave notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District of Texas at Austin."

Upshur states that whatever contract it might eventually conclude with SPA is expected to provide as follows:

SPA will provide standby protection for Upshur out of its power pool in the event that the Ore City Unit breaks down or is closed down for repair or maintenance. For this standby protection, Upshur will pledge 3,800 kilowatts of the capacity of the Ore City plant to the SPA power pool, to be available at all times when the plant is operating.

Upshur will be entitled to shut its plant down and take all of its energy from SPA when the small load demand makes operation of the plant costly.

During the first years of the contract, before the demands of Upshur and Panola-Harrison absorb all of the capability of the plant, the excess capacity will be purchased by SPA. The needs of Upshur and Panola-Harrison will come first, and SPA may acquire only any excess that remains after such needs are satisfied. Upshur maintains that, over the life of the contract, it will obtain far more capacity from SPA than SPA will receive from it.

Upshur's first two points of error briefed together are: (1) That the Trial Court erred in holding that the Upshur-Rural Electric Cooperative is not authorized to construct the proposed generating plant, and in enjoining Upshur from constructing such plant; (2) In committing this error, the Trial Court erred in concluding that the members of Upshur-Rural Electric Cooperative Corporation are presently receiving "central station service" from Relator Southwestern Electric Power Company within the meaning of Article 1528b, V.A.C.S.

As stated above, we agree with Upshur in both of these arguments.

■ Section 4(4) of the Texas Electric Corporation Act (Article 1528b) that corporations organized thereunder "shall have the power:"

"To generate, manufacture, purchase, acquire, and accumulate electric energy and to transmit, distribute, sell, furnish, and dispose of such electric energy to its members only, and to construct, erect, purchase, lease as lessee and in any manner acquire, own, hold, maintain, operate, sell, dispose of, lease as lessor, exchange, and mortgage plants, buildings, works, machinery, supplies, equipment, apparatus, and transmission and distribution lines or systems necessary, convenient, or useful."

The language quoted above plainly authorizes and empowers Upshur to construct and operate the generation and transmission facilities which are here under attack.

■ In seeking to circumvent the specific language in the statute just quoted, Relator relies entirely upon which is commonly called the "central station service" restriction or limitation.

Such restriction appears at two places in the Act. One, in Section 3, dealing with corporate authorization, and in Section 12, dealing with eligibility for membership in a cooperative corporation organized under the Act. In Section 3 the restriction is that a cooperative is authorized to serve certain persons who are not "receiving central station service" at the point of delivery, while Section 12 provides that all persons in certain areas are eligible for membership in a cooperative "who are not receiving central station service" at the point of delivery of electricity to them. In this regard, Section 3(5) provides:

"The words 'central station service' as used in this Act refer to electric service provided by a municipally owned system or by a public utility corporation, as described in Article 1435, Vernon's Revised Statutes of Texas."

This restriction plainly means that, if a person is already receiving service at a particular point from either a municipal plant or a private utility, neither Upshur nor any other co-operative would be authorized to serve him. Such a person would not be eligible to be a member of a cooperative,

and a cooperative could not lure him away from the service he was receiving.

On the other hand, if a certain person was in a rural area and was receiving no electric service of any kind, or if he was receiving service only from a source such as a Delco plant, he would be fully eligible for membership and could be served by Upshur or by any other cooperative.

Relator argues that, although the "central station service" restriction in no way inhibits Upshur from serving its present members, Upshur can continue to serve such members only if it continues to purchase its electric energy from Relator Southwestern Electric Power Company, or some other power company, and it will violate the central station service restriction if it generates its own energy.

The central station service restriction does not apply to a situation such as the one under discussion. The restriction applies only to authority to serve and eligibility to be served. It was designed solely to prevent competition between cooperatives and utilities with respect to customers already being served by the latter. Once a cooperative has acquired an eligible member and is serving him as it is authorized to do, the restriction in no way forever commits the cooperative to continue to serve him from the same wholesale source, or precludes it from switching to some other source of energy.

The definition of "central station service" that is contained in Section 3(5) of the Act refutes Relator's contention. The definition states that the words central station service: "refer to *electric service* provided by a municipally owned system or by a public utility corporation * * *" (emphasis added).

In the case at bar, Upshur and Upshur alone provides its members with service. It is Upshur's lines with which the members are connected. It is through these lines that the service is provided. It is Upshur that the members pay for such service. Consequently, within the plain meaning of the statutory definition, Upshur's members are not receiving central station service because they are being provided electric service by the cooperative, rather than by a municipally owned system or by a public utility corporation.

Since Upshur now purchases all of its electric energy from Relator, it is true that the "electric energy" received by Upshur's members came originally from Relator. Because of this, Relator argues, Upshur's members are now receiving central station service within the statutory definition. Such a conclusion requires substituting the words "electric energy" for the words "electric service" in which the definition is couched. While Relator does provide electric energy for Upshur, it is Upshur which in turn uses such energy in providing electric service for its members.

We would be putting the statute to strain should we hold that the plain wording of Section 4 authorizing the cooperative to build a generating plant is restricted by the central station service provision of Section 3 in that where once a cooperative such as Upshur has begun purchasing electric energy from a private utility, it is forever committed to that or a similar source and cannot thereafter switch to generating its own energy. Relator is in effect saying that a cooperative loses its statutory power to generate energy for its members if it does not exercise such power at the very beginning of its operations.

In State ex rel. Southwestern Gas & Electric Co. v. Upshur-Rural Electric Cooperative Corporation, 156 Tex. 633, 298 S.W.2d 805 (1957), Chief Justice Hickman speaking for the Supreme Court said:

"We are aided in our understanding of Article 1528b (the Texas Act) by referring to an Act of Congress known as the Rural Electrification Act of 1936, * * *

"It will be observed that the rural area and central station service limitations and the definition of rural area in our ECC Act follow the pattern of

the Federal Rural Electrification Act of 1936."

The Federal Act (7 U.S.C.A. § 904) authorizes the Administrator:

"* * * to make loans for rural electrification to persons, corporations, States, Territories, and subdivisions and agencies thereof, municipalities, peoples' utility districts and cooperative, nonprofit, or limited-dividend associations, * * * for the purpose of financing the construction and operation of generating plants, electric transmission and distribution lines or systems for the furnishing of electric energy to persons in rural areas who are not receiving central station service, * * *."

In an opinion of the Solicitor of the Department of Agriculture, dated May 26, 1944 we find:

"The Act prescribed no fixed chronological sequence for the construction of the various parts of the borrower's system—that is, it does not require that the generating plant, transmission lines, and distribution lines all be constructed, or the financing of all of these parts be provided for, simultaneously. The reason is clear and bespeaks sound judgment and full recognition on the part of Congress with respect to the essential problem involved. Rarely, if ever, does it occur that a cooperative with 500 miles of distribution line springs into being and operation complete in a single stage."

Upshur's third and fourth points of error, briefed together, are as follows:

■ (1) The Trial Court erred in holding generally that Upshur-Rural Electric Cooperative Corporation cannot enter into any contract to sell "or dispose of" electric energy to a non-member or to a person who would resell such energy for use by others, and in enjoining Upshur from entering into any such contract; (2) The effect of the holding and restraint complained of in the third point is to enjoin Upshur-Rural Electric Cooperative Corporation from entering into the proposed interconnection agreement with the Southwestern Power Administration, and the Trial Court erred in issuing an injunction which prevents Upshur from entering into an interconnection agreement with SPA.

We overrule these points and affirm the judgment of the Trial Court with respect thereto.

Here the principal effect of the Trial Court's judgment is to forbid Upshur from entering into any contract to sell "or dispose of" electric energy to a non-member. Nowhere in the judgment does the word "interconnect" appear. It is the sale or other disposition of electricity to non-members that is proscribed. Should Upshur interconnect its lines with those of another for any purpose that has been declared herein to be invalid then such interconnection would be ill advised. An interconnection for any other purpose is not a part of this lawsuit.

As stated by the Supreme Court in the Upshur case, cited above:

"* * * Whatever powers cooperatives possess are derived from, and therefore measured by, the Act which created them. To our minds that Act places these definite restrictions upon their powers: (1) A cooperative may serve its members only. * * *" (298 S.W.2d 807–808)

This holding is supported by the unequivocal language of Section 4 of the Act, consequently Upshur's arguments as to implied powers that it might have, or reference to the fact that the Act expressly provides that it shall receive a liberal construction must fail.

The judgment of the Trial Court is reversed and rendered in part and affirmed in part.

Reversed and rendered in part and in part affirmed.