NUMBER 13-05-413-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







CITY OF PORT ISABEL, TEXAS Appellant,


v.



HP PINNELL, TRUSTEE OF PINNELL TRUST

and THE TOWN OF SOUTH PADRE ISLAND, TEXAS Appellees.





On appeal from the 107th District Court


of Cameron County, Texas.






OPINION



Before Chief Justice Valdez and Justices Yañez and Castillo


Opinion by Justice Castillo



 Appellant, City of Port Isabel, Texas ("CPI"), appeals from the trial court
judgment following a bench trial in favor of appellees, HP Pinnell, Trustee of Pinnell
Trust ("Pinnell"), and The Town of South Padre Island, Texas ("SPI"). In thirteen
issues, CPI challenges the trial court's judgment declaring a series of annexation
ordinances to be void, and permanently enjoining CPI from (1) enforcing the
ordinances, and (2) enacting any future ordinances to annex (a) the Pinnell property,
(b) areas located entirely in the Laguna Madre, or (c) areas not contiguous or adjacent
to CPI's city limits or within its extraterritorial jurisdiction prior to passage of the
ordinances in issue. We affirm as modified. 


I. Background


A. The Original Annexation Ordinances


 In issue is a series of annexation ordinances CPI passed between June 2003 and
April 2004. CPI is a home-rule municipality located on the mainland of Texas,
bordering a body of water known as the Laguna Madre. SPI is a general law
municipality located on South Padre Island ("the Island"). The Laguna Madre lies
between CPI and the Island. The Pinnell property is located on the Island, north of SPI,
and consists of 460 acres. The only means of access to and from the Island (other
than by water or air) is the Queen Isabella Memorial Causeway which is two and one-half miles long. The distance across the Laguna Madre from CPI on the mainland to
the Island varies from two and one-half miles at the causeway, to six-seven miles
farther to the North. The Pinnell property is located approximately six miles across the
Laguna Madre from CPI.

 In June 2003, CPI passed annexation ordinance No. 625. This ordinance
annexed an area extending around and contiguous to a portion of CPI's city limits,
from its north to east sides. The territory encompassed by this ordinance consists
principally of an area in the Laguna Madre, and an adjacent thin strip of land. This
ordinance has not been invalidated.

 From July through November of 2003, CPI passed three more ordinances, each
designed to annex 5-mile tracts located entirely in the Laguna Madre. The first of
these was purported to be contiguous to that territory annexed by ordinance No. 625;
the others annexed blocks of territory in a line extending toward the north, each
allegedly contiguous to the next. (1) Together, the ordinances extended CPI's boundary
fifteen miles over the water. 

B. The Re-Annexation Ordinances

 None of the parties dispute that a controversy arose over whether CPI's 5-mile
annexations were valid. To quiet these claims of invalidity, CPI decided to re-annex
the total area annexed by ordinance Nos. 627, 628, and 633 in 1-mile increments. (2) 
CPI held public hearings relating to these re-annexations on January 26 and 27, 2004. 

 On February 4, 2004, CPI's city manager sent Pinnell a notice that CPI intended
to annex the Pinnell property, and that relevant hearings would be held March 8 and
9, 2004. On February 23, 2004, Pinnell requested SPI to expand its extraterritorial
jurisdiction ("ETJ") to include the Pinnell property. (3) SPI accepted Pinnell's request and,
on March 8, 2004, adopted SPI ordinance No. 04-04. SPI and Pinnell contend and the
trial court found that ordinance No. 04-04 became effective on the date of Pinnell's
request, which was February 23, 2004, the day before the re-annexations undertaken
by CPI. 

 On February 24, 2004, CPI held thirty-four consecutive "mini" meetings lasting
a total of approximately forty-three minutes, directed to adopting seventeen new
ordinances, Nos. 636-652, dealing with re-annexation of the territory in the Laguna
Madre. The last of these, ordinance No. 652, annexed territory that brought the
Pinnell property within one mile of CPI's then-extended city limits, and consequently
within its then ETJ. Because this action conflicts with rights alleged by SPI over its
ETJ as extended by ordinance No. 04-04, this dispute ensued. 

 On March 29, 2004, Pinnell filed suit seeking declaratory and injunctive relief
against CPI. Pinnell's petition asked the court to declare (1) CPI's annexation
ordinances void ab initio, and (2) the Pinnell property part of SPI's ETJ and therefore
not subject to annexation by CPI. Pinnell also sought injunctive relief, asking the trial
court to permanently enjoin CPI from enforcing existing ordinances and from enacting
future annexation ordinances in the Laguna Madre and on the Island. 


C. Annexation of the South Tip of the Island

 While this litigation was pending, on March 31, 2004, CPI enacted ordinance
No. 656, which annexed an area that extended over the Laguna Madre and included
territory on the south end of the Island. Although ordinance No. 656 was not a re-annexation ordinance, it was also invalidated by the trial court's judgment. 

 On April 1, 2004, SPI joined the suit as an intervenor.

D. The Correction Ordinances

 In their petitions, Pinnell and SPI complained that the re-annexations undertaken
by CPI contained numerous errors and thus their legal descriptions were inadequate. 
To diffuse these complaints and rectify any alleged problems, CPI enacted three more
ordinances on April 7, 2004, to clarify those legal descriptions. 

 Specifically, Pinnell and SPI claimed that ordinance No. 636 was not contiguous
to CPI's city limits, even as extended by 625, and that since all remaining ordinances
were dependent on No. 636 for its contiguity to CPI, all were void. In response, CPI
enacted ordinance No. 658 to close a gap and bring the annexed territory adjacent to
CPI's extended city limits. 

 Pinnell and SPI also claimed that the legal description in ordinance No. 641
failed to define a boundary on its eastern side. They further claimed that, even
assuming ordinance Nos. 636-640 were valid, the remaining areas (Nos. 642-652)
depended upon ordinance No. 641 for contiguity to CPI's city limits and were
consequently invalid. In response, CPI enacted ordinance No. 659 to provide an
eastern boundary and close the territory defined in the ordinance. 

 Finally, Pinnell and SPI claimed that a gap existed between territory annexed by
ordinance Nos. 642 and 643, and that this gap invalidated all successive ordinances
including Nos. 644-652. In response, CPI enacted ordinance No. 660 to correct the
problem and close the gap.

E. Ordinance No. 657 and the Pinnell Property

 On April 9 or 10, 2004, after suit had been filed and SPI had joined as an
intervenor, CPI passed ordinance No. 657 to annex the Pinnell property itself.
Ordinance No. 657 annexes territory contiguous to and within CPI's ETJ as extended
by ordinance No. 652. 

 Validity of ordinance No. 657 depends upon the validity of the annexations of
all the other re-annexation ordinances for contiguity to CPI's city limits. Pinnell and
SPI claim that all the ordinances, including No. 657, were void ab initio for a variety
of reasons. They therefore contend the Pinnell property was and is not contiguous to
CPI's city limits, and remains outside of its one-mile ETJ. (4) 

 Pinnell and SPI additionally argue the Pinnell property already lay within SPI's
ETJ at the time ordinance No. 657 was passed, by virtue of SPI's ordinance No. 04-04, and that CPI is therefore precluded from accessing that property, regardless of the
validity of the other ordinances. 


F. Subsequent Trial Court Proceedings

 On October 1, 2004, CPI filed a plea to the jurisdiction asserting that the trial
court lacked subject matter jurisdiction over the action. The trial court denied CPI's
plea on October 18, 2004. The case was tried to the bench in January 2005. CPI
brought an interlocutory appeal from the trial court's denial of CPI's plea to the
jurisdiction; the trial court was affirmed by this Court on March 24, 2005. (5) The trial
court's final judgment, finding in favor of Pinnell and SPI on all claims, issued on April
6, 2005. 

 The final judgment provides that: (1) CPI's annexation ordinance Nos. 627,
628, 633, 636-652, 658-660 and 657 were void ab initio; (2) the Pinnell property
became a part of SPI's ETJ on February 23, 2004; (3) CPI's notices for meetings held
February 24 and April 7, 2004, failed to satisfy legal requisites; (4) SPI sued in good
faith to enforce provisions of the Open Meetings Act; and (4) CPI is permanently
enjoined from either enforcing these ordinances or enacting similar annexation
ordinances in the future. The trial court subsequently entered fifty-nine pages of
Findings of Fact and Conclusions of Law on May 27, 2005. This appeal ensued. 

II. Issues on Appeal

 CPI presents thirteen issues for review, asking this Court to find that the trial
court erred in: 

(1) granting a prospective permanent injunction precluding CPI from
adopting certain future annexation ordinances (issue one), 


(2) concluding that Pinnell and SPI had standing to complain about CPI's
ordinances at the southern (issue two) and northern ends of the Island
(issue three), 


(3) declaring that legal descriptions for each ordinance in issue were
inadequate (issue four), 


(4) concluding that SPI's ETJ was extended effective February 23, 2004,
when SPI failed to secure CPI's consent to extend into its ETJ (issue
five), 


(5) concluding that SPI ordinance No. 04-04 was not void ab initio and
operated to extend SPI's ETJ over noncontiguous property (issue six) and
that SPI could therefore prevail on the merits (issue seven), 


(6) concluding that SPI had standing to assert procedural irregularities
related to the Open Meetings Act to collaterally attack the annexation
ordinances (issue eight), 


(7) concluding that CPI's actions on February 24, 2004, failed to satisfy
posting requirements of the Open Meetings Act (issue nine), 


(8) interpreting and applying sections 43.054 and 43.045 of the local
government code (issue ten), 


(9) adopting the controlling adjacency concept to give SPI standing to
complain (issue eleven),


(10) permitting SPI and Pinnell to make collateral attacks on the
ordinances based upon procedural irregularities (issue twelve), and 


(11) awarding attorneys' fees and court costs to Pinnell and SPI (issue
thirteen).


III. Standard of Review

 A party may challenge findings of fact on legal and factual sufficiency grounds. 
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 
Unchallenged fact findings are binding on the appellate court. Hotel Partners v. KPMG
Peat Marwick, 847 S.W.2d 630, 632 (Tex. App.-Dallas 1993, writ denied). As the
trier of fact, the trial judge may draw reasonable inferences from the evidence. Id. We
may not disregard the trial court's findings of fact on appeal if the record contains
some evidence of probative value from which these inferences may be drawn, or
unless the findings are so contrary to the overwhelming weight of the evidence as to
be manifestly wrong. Id.

 Although a party may not challenge a trial court's conclusions of law for factual
sufficiency, we review the conclusions the trial court draws from the facts to
determine their correctness. Id. We conduct a de novo review when applying the law
to the facts. El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de
C.V., 82 S.W.3d 622, 639 (Tex. App.-Corpus Christi 2002, pet. dism'd w.o.j.) (op.
on reh'g) (en banc). 

 Statutory construction is a question of law, and we review a trial court's
interpretation of statutes under a de novo standard of review. Tex. Dep't of Transp.
v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). In construing a statute, we must
attempt to determine and to give effect to the Legislature's intent. Id. In doing so,
we look first to the plain and common meaning of the language of the statute. Id.; see
Tex. Gov't Code Ann. § 311.011 (Vernon 2005). We may not construe a provision
of a statute so as to render another provision absurd or meaningless. See Chevron
Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex. 1987); Mueller v. Beamalloy, Inc., 994
S.W.2d 855, 860 (Tex. App.-Houston [1st Dist.] 1999, no pet.).

 Standing is also a question of law which we review de novo. Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); City of Fort Worth v. Tuckness,
165 S.W.3d 425, 427 (Tex. App.-Fort Worth 2005, no pet.); Byrd v. Estate of Nelms,
154 S.W.3d 149, 155 (Tex. App.-Waco 2004, pet. denied). As a component of
subject matter jurisdiction, the issue of standing is reviewed by the same standard
applicable to subject matter jurisdiction or a plea to the jurisdiction. Brown v. Todd,
53 S.W.3d 297, 305 (Tex. 2001); Tex. Ass'n of Bus. v. Tex. Air. Control Bd., 852
S.W.2d 440, 445-46 (Tex. 1993). Whether a court has subject matter jurisdiction is
a question of law. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226
(Tex. 2004).

 CPI raises no issues challenging the legal and factual sufficiency of the evidence
to support the trial court's findings of fact. 

IV. Standing-South End

 We note at the outset the trial court's general conclusions of law that both
Pinnell and SPI have standing to assert each of the claims alleged in this suit. 

 In its second issue, CPI contends that neither Pinnell nor SPI have standing to
challenge annexation ordinance Nos. 627, 637 (composed of two tracts), and 656,
involving territory near the south end of the island. CPI urges that Pinnell has no land-holding interest on the south end of the island, and the area encompassed within
ordinance No. 656 lies entirely outside the ETJ of SPI. CPI contends the trial court's
invalidation of these ordinances is a misapplication of the law, and an improper
extension of City of Missouri City v. Senior, 583 S.W.2d 444, 446 (Tex. Civ.
App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). (6)

 A municipality may only annex an area in its extraterritorial jurisdiction. Tex.
Loc. Gov't Code Ann. § 43.051 (Vernon 1999). Further, a municipality may not
annex land in another municipality's ETJ without that municipality's consent. City of
Murphy v. City of Parker, 932 S.W.2d 479, 481 (Tex. 1996). However, the
ordinances contested in this second issue do not encroach on SPI's ETJ. All are also
allegedly contiguous to CPI's ETJ as extended first by the valid ordinance No. 625,
and then by No. 637. None touch on a point of land within CPI or its ETJ. 

 A similar challenge was raised in the earlier interlocutory appeal as to all of the
ordinances as a unit. See City of Port Isabel, Texas. v. HP Pinnell, Trustee, 161
S.W.3d 233, 238 (Tex. App.-Corpus Christi 2005, no pet.). (7) This Court determined
that Pinnell and SPI had standing to bring suit because (1) they attacked the
ordinances as void ab initio, (8) and (2) they satisfied the requirement for a special
burden. (9) Id. at 238-39. A special burden was shown because, through No. 657
(which was dependant upon the other ordinances), Pinnell would be subject to taxation
by both SPI and CPI, and SPI's ETJ would be encroached. Id. at 239. Pinnell and SPI
therefore had standing to challenge all ordinances upon whose validity No. 657 rested. 
Id. (citing City of Northlake v. E. Justin Joint Venture, 873 S.W.2d 413, 416-17 (Tex.
App.-Fort Worth 1994, writ denied)); Senior, 583 S.W.2d at 446. 

 As we noted in the interlocutory appeal, Senior provides that the parties may
challenge ordinances upon which an offending ordinance is dependent. Senior, 583
S.W.2d at 446. Here, ordinance No. 657 is initially dependent upon the first
ordinances in the chain, Nos. 626 and 637. However, while No. 656 is clearly
dependent upon the validity of No. 637, it has no bearing upon whether or not No.
657 survives as a valid ordinance, as No. 656 is not in the northward-extending chain
of annexation or re-annexation ordinances. We agree with our prior analysis in the
interlocutory appeal, City of Port Isabel, 161 S.W.3d at 239-40, (10) and overrule CPI's
second issue as to ordinance Nos. 627 and 636. However, we conclude that this
analysis does not apply to No. 656. Neither SPI nor Pinnell have shown the requisite
special burden as to ordinance No. 656. 

 Using the same argument that validity of No. 657 is not dependent upon validity
of the southeast smaller tract of No. 637 (which is not in the northward chain), CPI
would have us separate our analysis of No. 637, to find viable that portion of the
ordinance related to the smaller tract. CPI cites to no case law that would permit us
to assess piece-meal the validity of only portions of ordinances. We decline to do so. 

 We sustain CPI's second issue as to No. 656 only. However, we note that
validity of No. 656 clearly remains dependent and contingent upon the validity of
ordinance No. 637, which may properly be challenged in this suit. 

V. Standing-North End

 In its third issue, CPI contends that Pinnell and SPI have no standing to
challenge any ordinances extending to the north in the chain, other than No. 657, the
ordnance actually annexing the Pinnell property. For the reasons set forth above, we
reject this contention and overrule CPI's third issue on appeal. (11) 

VI. Standing via the Controlling Adjacency Concept

 In its eleventh issue, CPI contends that the trial court erred in applying the
controlling adjacency concept to give SPI standing to complain. CPI urges that (1) the
concept is inapplicable in the circumstances, and (2) it has been replaced by the
Municipal Annexation Act and the first-in-time rule. (12) 

 The trial court's judgment recites that the 5-mile annexation and 1-mile re-annexation ordinances were void ab initio because they purported to annex areas
which "were not contiguous or adjacent to the city limits or located within the
extraterritorial jurisdiction of" CPI. The Findings of Fact relating to "controlling
adjacency" recite that in February 2004, Padre Shores, Ltd., just north of SPI, within
its ETJ and adjacent to it, requested that SPI extend its ETJ to include all of the Padre
Shores property. Later that same month, Pinnell sent his written request to SPI
requesting that the Pinnell property, which is north of and adjacent to the Padre Shores
property, also be included in SPI's ETJ. Findings include that the Pinnell property is
separated by a vast expanse of open water from CPI and is not adjacent to CPI as a
matter of law and, even if it were, "SPI would have controlling adjacency over the
Pinnell Trust Property . . . ." (13)

 CPI urges first that "controlling adjacency" has been obviated by the Municipal
Annexation Act and the concept adoption of extraterritorial jurisdiction. In Fox Dev.
Co., Inc. v. City of San Antonio, 468 S.W.2d 388, 339-40 (Tex. 1971), Fox brought
a collateral attack against a type of "spoke" city ordinance purporting to extend city
limits to include a proposed subdivision within the city's ETJ. Id. at 339. Fox argued
the ordinance was void, in that the area in question was not "territory lying adjacent
to" the City. Id. The court determined that the 1963 Municipal Annexation Act
controlled, was consistent with prior court decisions, and made provision for
annexation of "contiguous unincorporated areas." Id. at 340 (emphasis added) (citing
Municipal Annexation Act, 58th Leg., R.S., ch. 160, § 3, 1963 Tex. Gen. Laws 447,
447-48 (current version at Tex. Loc. Gov't Code Ann. §§ 41.021-.022 (Vernon
1999)). Adjacency remains the primary issue. "Controlling adjacency" rests "upon
the disproportionate touching of the respective city boundaries." Id.

 Here, the trial court invalidated the ordinances for other reasons, and then
reached its conclusions as to "controlling adjacency" only as a contingency. The CPI
ordinances were defeated because they, among other things, were not "adjacent" to
the city limits of CPI. Only if ordinance No. 652 were valid, then disproportionate
lengths of the Pinnell property touched the respective boundaries or ETJ of the cities. 
The trial court found a greater contact with SPI, and therefore that SPI had "controlling
adjacency." 

 CPI argues that since none of its boundaries ever touched SPI, the controlling
agency concept is inapplicable. This is not the proper measure; rather, it is whether
the boundary of the territory being annexed touches more of SPI's boundary than CPI's
boundary. If the CPI ordinances are invalid, the Pinnell property lies within the ETJ of
SPI, although it does not "touch" the city boundary of SPI (assuming the validity of
SPI's ordinance No. 04-04). If the ordinances are valid, then it lies within the ETJ of
CPI and touches the boundaries of CPI's city limits.

 We find no case law applying the concept of controlling adjacency to contact
with an ETJ. However, the law clearly provides that "[a]s a general rule, a city may
not annex land in another city's ETJ without that city's consent." City of Murphy v.
City of Parker, 932 S.W.2d 479, 481 (Tex. 1996); see Tex. Loc. Gov't Code Ann. §
42.022(c) (Vernon 1999). (14) 

 We conclude that although the concept of "controlling agency" has generally
been subsumed within that of ETJ, in certain circumstances it may still be an
applicable concept. Here, since SPI has standing to raise its other claims and since
controlling adjacency was relied upon only as a contingency argument, we conclude
that, whether or not this concept ultimately controls, SPI had the standing to raise the
argument. We overrule CPI's eleventh issue on appeal. 

VII. Standing and The Open Meetings Act

 In its eighth issue, CPI argues that SPI had no standing to assert procedural
irregularities with respect to notice postings under the Open Meetings Act to
collaterally attack the annexation ordinances. 

A. The Law

 The Texas Open Meetings Act (the "Act") was passed in 1967 to assure "that
the public has the opportunity to be informed concerning the transactions of public
business." Act of May 8, 1967, 60th Leg., ch. 271, R.S., § 7, 1967 Tex. Gen. Laws
597, 598 (current version at Tex. Gov't Code Ann. § 551.001 et seq. (Vernon 2004
& Supp. 2006)). The Act is designed to provide openness at every stage of a
governmental body's deliberations. Acker v. Texas Water Com., 790 S.W.2d 299,
300 (Tex. 1990); San Antonio v. Fourth Court of Appeals, 820 S.W.2d 762, 765
(Tex. 1991). "Every regular, special, or called meeting or session of every
governmental body shall be open to the public." Tex. Gov't Code Ann. § 551.002
(Vernon 2004); Acker, 790 S.W.2d at 300. All such meetings require advance written
notice of their date, time, place and subject. Tex. Gov't Code Ann. § 551.041
(Vernon 2004).

 Our review is directed to ensuring that the purposes of the Act are served.
Fourth Court of Appeals, 820 S.W.2d at 765. If a "reader" is given notice, the
requirement of the Act is satisfied and its purpose served. Id. If the contents of a
notice are undisputed, its adequacy is a question of law. Weatherford v. City of San
Marcos, 157 S.W.3d 473, 486 (Tex. App.-Austin 2004, pet. denied) (citing City of
San Angelo v. Texas Natural Res. Conservation Comm'n, 92 S.W.3d 624, 629 (Tex.
App.-Austin 2002, no pet.)).

B. The Trial Court's Findings

 The trial court's judgment states that the "notices posted by Defendant [CPI]
for the meeting of the city commission to be held on February 24, 2004 and April 7,
2004 failed to meet the requirements of §555.041 of the Texas Government Code." 
Relevant findings of fact provide as follows:

16. On December 23, 2003, [CPI] sent a single notice to property
owners, public entities providing services and railroad companies that it
intended to annex 17 areas consisting of 16,059.8 acres [sic].


17. On January 12, 2004, [CPI] sent a single notice to public school
districts that it intended to annex 17 areas consisting of 16,059.8 acres
[sic].


18. On January 12, 2004, and again on January 15, 2004, [CPI]
published a notice that it intended to hold a single public hearing on
January 26, 2004 and a single public hearing on January 27, 2004
relating to the annexation of the 17 areas . . . .


19. On January 26, 2004, [CPI] held the first of two single public
hearings relating to the annexation of 17 areas . . . .


20. On January 27, 2004, [CPI] held the second of two single public
hearings relating to the annexation of 17 areas . . . .


21. On February 4, 2004, almost three weeks before the purported
annexation of the 17 areas . . . [CPI] sent a notice to HP Pinnell that it
intended to annex the Pinnell Trust Property. 


22. On February 20, 2004, the city secretary of [CPI] posted 34 notices
of 34 meetings of the [CPI] city commission to be held approximately 1
minute apart beginning at 6:00 p.m. on February 24, 2004 to consider
and adopt 17 ordinances relating to the proposed annexation of 17 areas
. . . .


23. On February 24, 2004, during a 46-minute period, . . . [CPI] held 34
meetings and adopted 17 ordinances, . . . Nos. 636 through 652, on first
and second reading, purporting to annex 17 separate areas . . . . 


13.1.1. The city charter of [CPI] requires that before any ordinance can
become effective it must have two readings to be held at two separate
meetings of the city commission.


13.1.2. On or about February 20, 2004, the city secretary of [CPI]
simultaneously posted notices for 34 city commission meetings all to be
held on February 24, 2004. The meetings were to be held one minute
apart with the first meeting set to begin at 6:00 p.m. . . .


13.1.3. The notice for the first meeting to be held on February 24,
2004, stated under new business that there would be a first reading of
"Ordinance 626 . . . ." This meeting was scheduled to begin at 6:00
p.m.


13.15. The notice for the second meeting of February 24, 2004 stated
that there would be discussion and potential action to approve the
second and final reading of Ordinance No. 636. This second meeting
was to begin at 6:02 p.m.

 

[There follow a series of findings reflecting that the [CPI] notices
reflected the same sequence with respect to the other sixteen ordinances
in issue on that same date, each ordinance being addressed in two
separate, consecutive one-minute meetings.]


13.1.54. An interested person who saw only one of the notices posted
for the meetings to be held on February 24, 2004 by the [CPI] city
commission would not have been placed on notice of the intentions and
possible actions to be taken by the city commission of [CPI], i.e., that it
intended to pass 17 ordinances all on the same date.


13.1.55. An interested person who reviewed these notices would not
have been aware that all of the ordinances under consideration involved
possible annexation of land that was more than one mile from the City's
then existing city limits . . . [or] 13.1.56 . . . land that did not touch the
then existing city limits of [CPI].


13.1.57. The act of posting 34 notices of meetings to be held 1 minute
apart precluded essential public deliberation that would have advised an
interested member of the public of the consequences of each meeting. 


[There follows a series of findings related to the correction ordinances.]


Relevant Conclusions of Law are as follows: 


13.2.3. The Notices posted on February 20, 2004 for the meetings of
the [CPI] city commission to be held on February 24,2002, failed to
substantially comply with the notice requirements of § 555.041 of the
Texas Government Code. . . . [T]he Notices contained false and
misleading statements of the city commission's intent and the proposed
action to be taken at the meetings involved. . . . 


13.2.4. Because the notices failed to comply with § 555.041 of the
Texas Government Code, the court declares the actions taken by [CPI]
in adopting Ordinances 636 to 652 to be void pursuant to § 555.041 of
the Texas Government Code.


13.2.5 The actions taken by [CPI] in claiming to hold separate city
commission meetings one minute apart for purposes of having two
readings of Ordinance Nos. 636 to 652 was an abuse of discretion,
against public policy and in violation of its city charter and § 555.041 of
the Texas Government Code. . . .


[There follow comparable findings relating to the correction ordinances,
as well as a concluding finding, 13.2.8, that since all ordinances were
void, Ordinance No. 657 was void because "it was not and is not
adjacent or contiguous to the [CPI] city limits as they existed at the time
of the adoption of said ordinance."]


General Conclusions of Law include:


3. As the owner of the Pinnell Trust property which [CPI] purported to
annex by the adoption of Ordinance No. 657, and because [CPI] claimed
and claims said property is subject to ad valorem taxation and regulation
by [CPI], HP Pinnell, Trustee of the Pinnell Trust, suffers a peculiar and
special burden and is directly affected by Ordinance No. 657, as well as
the other annexation ordinances on which that ordinance is directly
dependent.


4. The claims alleged by HP Pinnell . . . and [SPI] challenging the validity
of the [CPI] annexation ordinances . . . constitute a collateral attack on
those ordinances and are claims that those ordinances are void ab initio
rather than merely voidable. 


5. [SPI] has standing to bring this suit to challenge the validity of [CPI's
ordinances] . . . because [SPI] was also claiming that this same property
was in its ETJ. 


C. CPI's Challenge


 CPI first contends, in its eighth issue, that Pinnell and SPI had no standing to
raise objections to procedures or notices provided for under the Act. CPI urges that
because any such irregularities would render the ordinance voidable only, and not
"void," it is subject to attack solely by quo warranto proceedings. Alexander Oil Co.
v. City of Sequin, 825 S.W.2d 434, 436 (Tex. 1992). Therefore, the trial court erred
in finding that Pinnell and SPI had authority to launch their private collateral attack on
the ordinances.

 This argument is inextricably intertwined with CPI's twelfth issue, in which it
contends the trial court erred in permitting SPI and Pinnell to make a collateral attack
based on procedural irregularities, because the only viable method was by quo
warranto proceeding. We address these issues together.

D. Analysis

 "The only proper method for attacking the validity of a city's annexation of
territory is by quo warranto proceeding, unless the annexation is wholly void." 
Alexander Oil, 825 S.W.2d at 436 (citing Hoffman v. Elliott, 476 S.W.2d 845, 846
(Tex. 1972) (per curiam)). Through quo warranto proceedings, "the State acts to
protect itself and the good of the public generally, through the duly chosen agents of
the State who have full control of the proceeding." Id. (citing Fuller Springs v. State
ex rel. City of Lufkin, 513 S.W.2d 17, 19 (Tex. 1974)). This requirement also avoids
the "specter of numerous successive suits by private parties attacking the validity of
annexations." Id. Therefore, the State must bring the action to question irregular use
of the delegated annexation authority. Id. 

 The sole exception to the State's bringing quo warranto proceedings is where
an ordinance is void ab initio for reasons other than a problem with notice under the
Act. See Alexander Oil, 825 S.W.2d at 435 (finding that suit could not be brought by
a private party to challenge a city's failure to comply with notice requirements relating
to annexation ordinances). A complaint based solely on a failure to comply with notice
requirements under the Act may not be brought collaterally by Pinnell and SPI. Id. at
436. However, where the annexation ordinances are "wholly void," such an attack
is not precluded. Hoffman, 476 S.W.2d at 846 ("If the annexation be wholly void
because not authorized by law or color of law, a collateral attack is permissible by
private parties who suffer some burden peculiar to themselves."). In our earlier
opinion, we similarly concluded that because Pinnell and SPI alleged that the
ordinances were void ab initio for a variety of reasons, their challenges were not
limited simply to procedural issues and were therefore permissible. City of Port Isabel,
161 S.W.3d at 238-39. We overrule CPI's eighth and twelfth issues. 

VIII. Chapter 212 and Validity of the Five-Mile Ordinances

 In its fifth issue, CPI contends the trial court erred in finding that CPI's ETJ did
not extend for five miles because section 212 of the Texas Local Government Code
provides:

In this subchapter:


(1) "Extraterritorial jurisdiction" means a municipality's extraterritorial
jurisdiction as determined under Chapter 42, except that for a municipality
that has a population of 5,000 or more and is located in a county
bordering the Rio Grande River, "extraterritorial jurisdiction" means the
area outside the municipal limits but within five miles of those limits. 


Tex. Loc. Gov't Code Ann. § 212.001(1) (Vernon 1999). SPI and Pinnell contend
chapter 212 is inapplicable, as it applies only to subdivision regulation and not to
annexations.

A. Statutory Interpretation and Intent

 Matters of statutory interpretation are questions of law, over which we exercise
de novo review. Tex. Dep't Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). 
The primary rule of statutory interpretation is that a court must look to the intent of the
legislature and must construe the statute so as to give effect to that intent. Lee-Hickman's Invs. v. Alpha Invesco Corp., 139 S.W.3d 698, 700 (Tex. App.-Corpus
Christi 2004, no pet.) (per curiam) (citing City of Austin v. L.S. Ranch, Ltd., 970
S.W.2d 750, 752 (Tex. App.-Austin 1998, no writ)). It is a rule of statutory
construction that every word of a statute must be presumed to have been used for a
purpose. Cameron v. Terrell & Grant, Inc., 618 S.W.2d 535, 540 (Tex. 1981). 
Likewise, every word excluded from a statute must also be presumed to have been
excluded for a purpose. Id. Only when it is necessary to give effect to the clear
legislative intent may we insert additional words or requirements into a statutory
provision. Id. 

B. The Annexation Statutes Vis-a-Vis Regulation of Subdivisions

 Chapter 212 of the local government code deals with regulation of subdivisions. 
Tex. Loc. Gov't Code Ann. § 212.001, et seq. (Vernon 1999 & Supp. 2006). Such
regulations originated in 1927 with the adoption of chapter 231, and called for the
provision of plats for any subdivision within five miles of city limits. Act of March 14,
1927, 40th Leg., R.S., ch. 231, 1927 Tex. Gen. Laws 342. This law was
subsequently amended and codified as article 974a, Tex. Rev. Civ. Stat. Ann. art. 974a
(Vernon 1963), and was again amended in 1987 to make specific provision for cities
with a population of 5,000 or more that also lay within a county bordering on the Rio
Grande River:

For a city that has a population of 5,000 or more . . . and that lies within
a county that borders on the Rio Grande River, the provisions of Chapter
231 . . . (Article 974a) . . . that relate to the area within five miles of the
city do actually apply to that area within five miles of the city. This is the
case regardless of the fact that those provisions as they apply to other
cities, are superseded by other law and are construed as applying to the
extraterritorial jurisdiction of the city, as determined under the Municipal
Annexation Act, rather than to the area within five miles of the city." 


Act of June 1, 1987, 70th Leg., R.S., ch. 1102, § 9, 1987 Tex. Gen. Laws 3768,
3772 (currently codified in chapter 212).

 By contrast, the Municipal Annexation Act, originating in 1963, specifically
addresses types of municipalities, their authority to annex, and the nature and the
extent of their ETJ. See Municipal Annexation Act, 58th Leg., R.S., ch. 160, 1963
Tex. Gen. Laws 447, 447-48. This act provides that the ETJ of a municipality of CPI's
population is the unincorporated area that is contiguous to the corporate boundaries of
the municipality and "within one mile of those boundaries . . . ." Tex. Loc. Gov't Code
Ann. § 41.021 (Vernon 1999). 

 CPI correctly notes that it is a city with a population of 5,000 or more, located
in Cameron County, which borders the Rio Grande River. It is clearly authorized to
regulate subdivisions up to a distance of five miles. However, the legislative history
denotes a clear distinction between authority to annex and authority to regulate
subdivisions. We do not agree that section 212 creates a 5-mile ETJ for all purposes,
including annexation; in fact, it is specifically limited to "this subchapter." Tex. Loc.
Gov't Code Ann. § 212.001 (Vernon 1999). In construing a statute, we give effect to
the Legislature's intent, Cameron, 618 S.W.2d at 540, looking to the plain and
common meaning of the language used. Needham, 82 S.W.3d at 318; see Tex. Gov't
Code Ann. § 311.011 (Vernon 2005). We presume every word was used for a
purpose. Cameron, 618 S.W.2d at 540. We therefore conclude that the intent of the
Legislature, in adopting section 212, was not to extend a city's ETJ for annexation
purposes. (15) 

 Therefore, we conclude that the trial court did not err in finding that (1) "the
definition of ETJ in §212.001, Texas Local Government Code, applies only to the
application of those rules and ordinances and not to annexation," and (2) the 5-mile
ordinances, Nos. 627, 628 and 633, are "void ab initio" on this basis. We overrule
CPI's fifth issue on appeal. 

IX. Chapter 43 and Validity of the 

5-Mile and the 1-Mile Ordinances


 Closely intertwined with this analysis of section 212 of the local government
code is CPI's tenth issue, wherein CPI contends the trial court erred in applying sections
43.054 and 43.0545 of the local government code. Tex. Loc. Gov't Code Ann. §§
43.054-.0545 (Vernon Supp. 2006). These sections address limitations on a city's
efforts to annex territory. 

 Section 43.054 provides that a city such as CPI, with a population of less than
1.6 million, may not annex a publicly or privately owned area, including a strip of area
following the course of a road, highway, river, stream or creek, unless the width of the
area at its narrowest point is at least 1,000 feet. Tex. Loc. Gov't Code Ann. §
43.054(a) (Vernon Supp. 2006). Section 43.0545 provides that a municipality may
not annex an area located in its extraterritorial jurisdiction only because the area is
contiguous to municipal territory that is less than 1,000 feet in width at its narrowest
point. Id. § 43.0545(a). 

 The trial court's judgment provides that the ordinances in issue were void ab
initio, in that they purport: 

. . . to annex areas which either (I) were not contiguous or adjacent to the
city limits or located within the extraterritorial jurisdiction of [CPI], as such
city limits and extraterritorial jurisdiction existed prior to the adoption [of
the ordinances], or (ii) would only be contiguous or adjacent to the city
limits or located within the extraterritorial jurisdiction of [CPI] because of
said [ordinances, which] are also void ab initio.


 Key Findings of Fact and Conclusions of Law provide:

2.1.1. The area annexed as Parcel 2 by Ordinance 625 [the first
ordinance, not invalidated, which lies adjacent to the land on which CPI
is located] lies almost entirely within the Laguna Madre, except for a small
area of land on the southern tip which is less than 1,000 feet in width at
its narrowest point after excluding the area in the Laguna Madre. 


[Successive ordinances are located in the ETJ of CPI solely because the
first is contiguous to Parcel 2 described in ordinance No. 625, "lie entirely
within the Laguna Madre, include no land in addition to that body of
water, and are less than 1,000 feet in width at their narrowest point after
excluding the area in the Laguna Madre." They are not adjacent or
contiguous to the corporate boundaries of [CPI] and were not and are not
located within the ETJ of [CPI]. 


Conclusion 2.2. Each of Ordinance Nos. 627, 628 and 633 [the 5-mile
ordinances] was and is void ab initio because each of said ordinances
purported to annex areas located entirely within the Laguna Madre which
[CPI] was and is prohibited from annexing under § 43.0545, Texas Local
Government Code. 


6.1. Findings. The area[s] annexed by [the 5-mile ordinances and the 1-mile ordinance Nos. 636-652] lie entirely within the Laguna Madre,
include no land in addition to that body of water, and are less than 1,000
feet in width at their narrowest points after excluding the area in the
Laguna Madre. The areas are located in the ETJ of [CPI], if at all, only
because they are contiguous to purported municipal territory described in
[the preceding ordinance].


6.2.1. Conclusion of Law. Each of Ordinance Nos. 636 through 652 was
and is void ab initio because each of said ordinances purported to annex
areas located entirely within the Laguna Madre which [CPI] was and is
prohibited from annexing under § 43.0545, Texas Local Government
Code. (16) 


The trial court similarly found all of the correction ordinances (Nos. 658-660) to be void
ab initio because, among other reasons, "none of the areas purportedly annexed . . .
were or are adjacent or contiguous to [CPI] city limits."

 We agree with CPI that the language of section 43.0545(a) does not in itself
impose a limitation based upon the character of the total area being annexed, including
whether or not it is water. Tex. Loc. Gov't Code Ann. § 43.0545(a) (Vernon Supp.
2006). However, CPI then asserts that the annexed territory clearly exceeds the 1,000
feet and that any findings to the contrary are in error. In doing so, CPI ignores the plain
language of section 43.0545(e) which clearly states that, for purposes of this section,
"roads, highway, rivers, lakes, or other bodies of water are not included in computing
the 1,000-foot distance unless the area being annexed includes land in addition to a
road, highway, river, lake or other body of water." Tex. Loc. Gov't Code Ann.
§43.0545(e) (Vernon Supp. 2006). (17) 

 The record establishes adequate basis for the trial court's findings that, although
the total length of contiguous abutment between the ordinances may have exceeded
1,000 feet, there is no contiguous connection that is at least 1,000 feet in width at its
narrowest point, after excluding the water. See id. Those findings, which are not
separately identified or challenged by CPI except by the general statement set out
above, (18) find the requisite land connection was missing and that, therefore, the
ordinances were void ab initio. We agree that ordinances purporting to annex only open
areas of water, without any of the requisite contiguous land, defeat the intent of the
statute. (19) We conclude the trial court did not err in either its findings of fact or
conclusions of law, and overrule CPI's tenth issue on appeal. (20)

X. Adequacy of Legal Descriptions

 In issue four, CPI contends the trial court erred in declaring that legal descriptions
for each ordinance were inadequate. The findings of fact and conclusions of law point
out errors in the legal descriptions of the ordinances and state that all re-annexation
ordinances lacked appropriate bearing sources. (21) Then, the trial court identifies fatal
defects in the legal descriptions of ordinance Nos. 636, 641, and 643. Specifically,
even assuming the ordinances were otherwise valid: (1) there was a gap between the
territory included in No. 636 and the easternmost boundary of No. 625, such that No.
636 was neither adjacent nor contiguous to CPI's city limits; (2) the legal description
for No. 641 lacked any eastern border; and (3) there was a gap of more than one mile
between the territory annexed by ordinance Nos. 642 and 643, placing No. 643 beyond
the ETJ of CPI. Consequently, since the respective ordinances are neither adjacent nor
contiguous to CPI's city limits (whether or not the ordinances in between are presumed
to be valid), the ordinance with a fatal defect in its legal description is void ab initio, as
are all following ordinances dependent upon it for their connection to CPI's city limits,
up to and including No. 657 which purported to annex the Pinnell property. 

 It is undisputed that CPI enacted three correction ordinances, No. 658, 659, and
660, to address these problems. The trial court found these correction ordinances to
be void ab initio for several reasons, including that their efforts to make "clarification
and non-substantive corrections" were ineffective to validate the prior ordinances, and
were themselves void ab initio. 

 CPI contends the trial court erred in finding that the annexation ordinances lack
a proper bearing source. (22) Further, even if this were true, CPI, relying on State ex rel.
Averitt v. Wofford, 39 S.W. 921, 923 (Tex. 1897), urges that the trial court was
obligated to look to the "intent" of the legislation and give effect thereto. CPI argues
that the application of standard rules of construction must be reasonable to carry into
effect the intent of the enacting body, which here was clearly to annex territory alleged
to be contiguous to CPI. 

 However, even if we were to set aside the findings or conclusions of law relating
to the identification of bearing sources (or the absence thereof), CPI fails to address any
of the other allegedly fatal defects, including the gaps between the territories described
in the various ordinances. CPI presents no argument that the correction ordinances are
either valid or served to resurrect other dependent ordinances which may have failed
based on those defects. CPI contends only that we are to enforce its clear "intent" to
annex. 

 We note that a city annexation ordinance containing a description which does not
close is void; any effort to establish an intent to include a call or "close" the territory,
or by analogy a gap, will not validate the ordinance. State ex rel. Rose v. City of La
Porte, 286 S.W.2d 782, 788-89 (Tex. 1965). 

Omitted calls may not be added to an annexation ordinance by showing
that the enacting body intended the call to be included. In the Rose case
[386 S.W.2d at 788], the members of the city council and the mayor
attempted to testify as to their intent. In the instant case, the surveyor
went to the deed records, which were not referred to in the ordinance or
petition, to determine the city council's intent. Neither is an acceptable
procedure. The description in the ordinance must be relied upon to the
exclusion of extraneous records, unless referred to in the ordinance, or
unless a latent ambiguity arises from extraneous facts.


In the instant case there are numerous errors patent in the ordinance. 
There is too much extraneous information which needs to be supplied in
order to close the boundaries. After employing the appropriate rules of
construction and considering the testimony of the surveyors, the trial
court did not err in concluding that field notes contained in ordinance 102
did not close. The court also correctly held that the area annexed by
ordinance 116 was not adjacent to the corporate limits of the city and
was therefore void.


Senior, 583 S.W.2d at 448 (citations omitted). Similarly, defects in the ordinances
before us, separate and apart from the lack of a bearing source, defeat them and all
ordinances dependent upon them. 

 We conclude the trial court did not err in finding the legal descriptions to be
defective, invalidating the ordinances, and rendering them void ab initio, whether
because they lacked a bearing source or because of other defects causing them and all
ordinances dependent thereon for contiguity to CPI to fail. Since an independent defect
is alleged that No. 636, the first in the chain, failed to be contiguous to No. 625, all are
necessarily void. Further, we do not consider that a correction ordinance enacted some
months later, even if effective to correct a defect, is effective to resurrect other
dependent ordinances which were invalidated when the defective ordinance failed. An
ordinance that is void ab initio is not void upon a declaration from the trial court, but
rather ab initio. It therefore does not spring back into existence simply because some
other ordinance may be "corrected." We conclude the trial court committed no error,
and overrule CPI's fourth issue on appeal. 

XI. Validity of SPI Ordinance No. 04-04

 In issues five, six and seven, CPI challenges the validity of SPI's ordinance No.
04-04. The trial court's judgment recites: "The [ETJ] of [SPI] was expanded, effective
as of February 23, 2004, to include that certain property . . . owned by [Pinnell.]." Its
findings recite this expansion of SPI's ETJ was proper pursuant to section 42.022(b)
of the local government code. Tex. Loc. Gov't Code Ann. § 42.022(b) (Vernon
1999). (23) 

 CPI urges No. 04-04 is void because it (1) expanded SPI's ETJ improperly into
the ETJ of CPI (based either upon its alleged 5-mile ETJ or upon the ETJ of the re-annexation ordinances), (2) CPI never gave its consent, (3) the Pinnell tract was not
then contiguous to SPI's ETJ, and, in any event, (4) SPI has no standing. We have
previously addressed the standing issue. Because CPI's 5-mile and 1-mile ordinances
are void ab initio for other reasons, such that CPI's ETJ was not extended and its
annexation of the Pinnell property by CPI was never effected, (24) we need not reach
these issues. (25) 

XII. The Open Meetings Act and Posting Requirements

 In issue nine, CPI contends that the trial court erred in concluding that actions
taken on February 24, 2002, in the series of council meetings, failed to satisfy posting
requirements of the Open Meetings Act. Because we have concluded that the
ordinances were void ab initio for other reasons, we do not reach this issue. See Tex.
R. App. P. 47.1. 


XIII. The Prospective Injunction

 In its first issue, CPI contends that the trial court erred in issuing a permanent
injunction that, among other things, would prohibit CPI from enacting future annexation
ordinances. 

A. The Judgment and Findings

 After concluding that the ordinances in issue are void ab initio, the trial court's
judgment, provides:

(6) [Pinnell and SPI] are entitled to relief permanently enjoining [CPI]
from:


(a) annexing the Pinnell Trust Property, or any portion
thereof, collecting any ad valorem taxes from [Pinnell]
. . .


(b) annexing any areas located entirely within that body
of water known as the Laguna Madre which do not
also include, in addition to that body of water, land
which is at least 1,000 feet in width at is narrowest
point after excluding the area in the Laguna Madre; 

 * * * IT IS FURTHER, ORDERED, ADJUDGED, DECREED and DECLARED
that, to the extent that any subsequent ordinances adopted by the city
commission of [CPI] purport to annex areas which either (i) were not
contiguous or adjacent to the city limits or located within the
extraterritorial jurisdiction of [CPI], as such city limits and extraterritorial
jurisdiction existed prior to the adoption of said Ordinance Nos. 627, 628,
and 633, 636 through 652, 658 through 660, and 657, or (ii) would only
be contiguous or adjacent to the city limits or located within the
extraterritorial jurisdiction of [CPI] because of said Ordinance Nos. 627,
628, and 633, 636 through 652, 658 through 660, and 657, said
subsequent ordinances are also void ab initio. 


 IT IS FURTHER, ORDERED, ADJUDGED, and DECREED that [CPI]
should be and hereby is commanded to permanently desist and refrain
from:


 (1) annexing that certain property . . . owned by [Pinnell]
. . . or exercising any jurisdiction, extraterritorial or
otherwise, over that certain property described in
Exhibit "A" to the Judgment . . .


 (2) annexing any areas located entirely within that body
of water known as the Laguna Madre which do not
also include, in addition to that body of water, land
which is at least 1,000 feet in width at is narrowest
point after excluding the area in the Laguna Madre;

 The trial court concluded: 14.1.6. Absent the granting of injunctive relief, there is an imminent
threat of harm and an imminent harm that [CPI] will continue to
circumvent the requirements of Chapter 43 of the Texas Local
Government Code and seek means to accomplish the annexation of areas
in and across the Laguna Madre and on the Island including the Pinnell
Trust Property.


14.1.7. Absent the granting of injunctive relief, [Pinnell and SPI] will
suffer irreparable injury in that the Pinnell Trust Property and property
within the ETJ of [SPI] will be annexed by [CPI] and subject to ad valorem
taxes and regulations. 


14.2.3. To provide adequate protection to [Pinnell and SPI], and in the
absence of any claim or showing that injunctive relief should be limited in
duration [Pinnell and SPI] are entitled to permanent injunctive relief from
a continuation by [CPI] of its repeated and longstanding unlawful actions
to annex areas within and across the Laguna Madre and onto the Island
in an effort to annex the Pinnell Trust Property and areas within the ETJ
of [SPI]. 


B. Analysis

1. The General Rule

 CPI argues that the trial court's implementation of a prospective injunction to
prohibit future annexations, i.e., future municipal legislative acts, is a violation of the
separation of powers doctrine under the Texas Constitution. CPI stresses the
distinction between enjoining enforcement of an existing ordinance and enjoining the
passage of a prospective ordinance. SPI and Pinnell contend that such a prospective
injunction is appropriate and permissible where a governmental defendant has
demonstrated its intent to repeat or continue the injurious action, (26) and where it has
been shown that irreparable harm will result from enactment of the ordinance. 

 The enactment of an ordinance by the legislative body of a city is a sovereign act
of government. City of Dallas v. Couchman, 249 S.W. 234, 239 (Tex. Civ.
App.-Dallas 1923, writ ref'd). "The power to annex is committed to the political
branches of state government; it is a legislative prerogative." Alexander Oil, 825
S.W.2d at 438. Because our system of government is crafted to have three separately
defined branches of government, "no one of them, and least of all the judicial
department, should attempt to exceed the limits set about it and invade by such
interference the domain of another." Couchman, 249 S.W. at 239. The ability of a
court to enjoin the future enactment of ordinances, including annexation ordinances,
has therefore long been strictly circumscribed:

As before stated, the record clearly establishes that the ordinance has not
been finally enacted, and that it is still pending before the board of
commissioners, to be finally considered and acted upon. The decree of
the court, therefore, enjoins a legislative act of the board of
commissioners. It is well settled . . . that the enactment of a void
ordinance will not be enjoined, although its invalidity clearly appears,
unless it also clearly appears that the mere enactment of the ordinance of
itself will work irreparable injury without the intervention of some
wrongful act under its authority.


Id. "The restraining of the passage of an ordinance is a legislative act, and such
restraint cannot be exercised by the courts." City of Monahans v. State ex rel. Cook,
348 S.W.2d 176, 179 (Tex. Civ. App.-El Paso 1961, writ ref'd n.r.e.); see City of
Rusk v. Cox, 665 S.W.2d 233, 237 (Tex. App.-Tyler 1984, writ ref/d n.r.e.)
(concluding that finding an injunction necessary to provide relief against enforcement
does mean that a court may enjoin a city from enacting future zoning ordinances); City
of Universal City v. City of Selma, 514 S.W.2d 64, 73 (Tex. Civ. App.-Waco 1974,
writ ref'd n.r.e.) (27) ("The proper practice, therefore, is to wait until the ordinance is
passed and the city attempts to operate under it before seeking relief against it . . . ."). 

2. The Exception

 A sole exception to this general rule exists where irreparable injury will result
from the mere passage of the ordinance. Couchman, 249 S.W. at 239. More is
required than the mere enactment of the void ordinance, even one invalid on its face;
it must also clearly appear "that the mere enactment of the ordinance of itself will work
irreparable injury without the intervention of some wrongful act under its authority." 
Id.; Spinks Indus., Inc. v City of Fort Worth, 452 S.W.2d 799, 800 (Tex. App.-Fort
Worth 1970, no writ). The fact that an ordinance is void alone works no injury. Id. 
Only after acts are impending or steps are already being taken to directly cause harm
does the basis for relief exist, and only then may the authority of a court be invoked to
restrain the injury. Couchman, 249 S.W. at 239; see Monahans, 348 S.W.2d at 179. 
Where passage of the ordinance will cause no irreparable harm or injury beyond the
power of redress by subsequent judicial proceedings, judicial interference is not
warranted, even if the proposed ordinance disregards some constitutional restraint. 
City of Houston v. Houston Gulf Coast Bldg. and Constr. Trades Council, 697 S.W.2d
850, 852(Tex. App.-Houston [1st Dist.] 1985, no writ); (28) see A&A Constr. Co. v. City
of Corpus Christi, 527 S.W.2d 833, 835 (Tex. App.-Corpus Christi 1975, no writ). 

3. Application

 The trial court could not enjoin CPI's future enactment of annexation ordinances
unless those enactments, in and of themselves, would cause irreparable harm that
could not be redressed by subsequent judicial proceedings. City of Houston, 697
S.W.2d at 852. Based on its conclusion that CPI will continue its annexation efforts,
the trial court issued findings of fact 14.1.6 and 14.1.7, cited above, which purport to
find irreparable harm. Pinnell urges that, inasmuch as these findings of fact were not
challenged by CPI, this Court is bound by them and must affirm the injunction. "When
findings of fact are filed and are unchallenged . . . they occupy the same position and
are entitled to the same weight as the verdict of a jury." McGalliard v. Kuhlmann, 722
S.W.2d 694, 696 (Tex. 1986). However, findings of fact are binding on an appellate
court only so long as the contrary is not established as a matter of law, or if there is
no evidence to support the finding. Id. 

 Moreover, the question of whether a threat of imminent harm exists to warrant
injunctive relief is a legal question for the court-not a factual question. GTE Mobilnet
of South Tex., Ltd. v. Pascouet, 61 S.W.3d 599, 620 (Tex. App.-Houston [14th Dist.]
2001, pet. denied) (citing State v. Tex. Pet Foods, Inc., 591 S.W.2d 800, 803-04
(Tex. 1979) ("The jury does not determine the expediency, necessity, or propriety of
equitable relief . . . . The determination of whether to grant an injunction based upon
the ultimate issues of fact found by the jury is for the trial court, exercising chancery
powers.")). 

 CPI challenges both the trial court's authority and its legal conclusion that
injunctive relief is appropriate to prevent future annexation ordinances. These are
questions of law. The findings of fact actually identify no "irreparable harm" other than
that the ordinance may pass and ultimately subject property owners to ad valorem
taxes and regulations. We find this alleged "irreparable harm" to be indistinguishable
from the threat of enactment of the ordinance, which is the conduct to which the
related conclusion of law is directed. "[E]nactment of a void ordinance will not be
enjoined . . . unless it also clearly appears that the mere enactment of the ordinance of
itself will work irreparable injury without the intervention of some wrongful act under
its authority." Spinks, 452 S.W.2d at 800. (29) 

 The findings identify no independent wrongful act, injury, exigent circumstance,
or harm other than the likely passage of future ordinances. As a matter of law, passage
of an ordinance, in itself, does not constitute irreparable harm. Id. Accordingly, we are
not bound by the findings of "fact." McGalliard, 722 S.W.2d at 696.

 We conclude the circumstances before us do not fit within the identified
exception to the general rule. Couchman, 249 S.W. at 239; Spinks, 452 S.W.2d at
800; Monahans, 348 S.W.2d at 179. Accordingly, the trial court had no authority to
invade the legislative functions of CPI. We conclude the trial court erred to the extent
it sought to enjoin the future passage of annexation ordinances, and we sustain CPI's
first issue on appeal. (30) 

XIV. Attorney Fees

 In issue thirteen, CPI contends the trial court abused its discretion in awarding
attorney fees to Pinnell and SPI, and particularly to SPI. CPI contends error (1) in
awarding fees to Pinnell and SPI, particularly because (2) the trial court commented at
the hearing that SPI's participation was not "necessary" to full prosecution of the
lawsuit. (31) CPI argues the trial court's decision to award fees was based on its desire
to end this litigation, rather than any conclusion that the fees were reasonable and just,
and the court therefore abused its discretion. 

 A party may recover attorney fees only if provided by statute or by contract. 
Gulf State Util. Co. v. Low, 79 S.W.3d 561, 567 (Tex. 2002) (citing Dallas Cent.
Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992)). In a declaratory
judgment proceeding, "reasonable and necessary attorneys' fees" may be awarded as
are "equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997)
(emphasis added); Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 643 (Tex. 2005). 

 The reasonable and necessary requirements are questions of fact to be
determined by the fact finder, but the equitable and just requirements are questions of
law for the trial court to decide. Ridge Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143,
161 (Tex. 2004). "Unreasonable fees cannot be awarded, even if the court believes
them just, but the court may conclude that it is not equitable or just to award even
reasonable and necessary fees." Id. at 161-62 (citing Bouquet v. Herring, 972 S.W.2d
19, 21 (Tex. 1998)). A judge's decision to award or not award attorney's fees is
reviewed on appeal for an abuse of discretion. Id. at 163. To find an abuse of
discretion, the trial court must have acted without reference to any guiding rules or
principles, such that the act was arbitrary or unreasonable. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Merely because a trial court
may decide a matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of discretion has
occurred. Id. at 242. 

 A separate hearing on the issue of attorney fees was held on April 6, 2005.
Counsel for both Pinnell and SPI testified on the issue. Despite the trial court's
comments as to whether or not SPI was a "necessary party," it is undisputed that SPI
was a party to the litigation. Adequate evidence was before the trial court to enable
it to award the fees as it did, including that the awards were reasonable, necessary and
the amounts were just and equitable. Evidence included the attorneys' qualifications
to give a legal opinion on the issue, the time spent, hourly rate, and total amount. 
Counsel for CPI had the opportunity to conduct cross-examination. Nothing precluded
the trial court, despite its rhetorical comments, from awarding the fees which were fully
supported by the record. We conclude that, in making the awards as it did, the trial
court did not abuse its discretion or act without reference to any guiding rules or
principles, such that the act was arbitrary or unreasonable. Downer, 701 S.W.2d at
241-42. We overrule CPI's issue thirteen on appeal.

XV. Conclusion

 We overrule CPI's issues on appeal except as to its first issue and the
prospective injunction. (32) We modify the judgment of the trial court to exclude the
prospective portion of the injunction, and affirm as modified. (33)


 ERRLINDA CASTILLO 

 Justice


Opinion delivered and filed

this 12th day of October, 2006.



1. In enacting these ordinances, Nos. 627, 628, and 633, CPI relied upon chapter 212 of the
Texas Local Government Code. See Tex. Loc. Gov't Code Ann. § 212.001(1) (Vernon 1999). The first
of these ordinances, No. 627, was enacted on July 22, 2003; No. 627 was allegedly contiguous to No.
625. The next, No. 628, was adopted August 13, 2003, and extended CPI's territory further north of
No. 627, into the water. The last, No. 633, was contiguous to No. 628 and was adopted November
25, 2003. 
2. CPI has always maintained the validity of the 5-mile tract annexation ordinances (Nos. 627,
628, and 633). However, all three were invalidated by the trial court judgment, as were the later
ordinances that sought to annex the individual one-mile tracts.
3. Absent specific requests by landowners, SPI's ETJ would extend only one-half mile beyond
its town limits. See Tex. Loc. Gov't Code Ann. § 42.021(1) (Vernon 1999). 
4. CPI also urges that because its ETJ is actually five miles, the Pinnell property fell within CPI's
ETJ as early as June 24, 2003, when ordinance No. 625 was passed. 
5. In the interlocutory appeal, CPI challenged Pinnell and SPI's entitlement to sue CPI. Three
issues raised in this appeal were also preliminarily addressed in the interlocutory appeal, including (1)
that SPI and Pinnell lack standing to bring this suit, because it can only arise via a quo warranto
proceeding brought by the State of Texas, (2) that SPI and Pinnell lack capacity to complain about
procedural irregularities, and (3) that SPI and Pinnell lack capacity or standing to complain and failed to
state a claim as to violations of the Texas Open Meetings Act. Our earlier decision distinguished
jurisdictional authority from issues relating to capacity. It also noted that because Pinnell and CPI
claimed the ordinances were void ab initio and could show a special burden, the action could be brought,
but our Court did not reach the merits relating to validity of the ordinances. See City of Port Isabel,
Texas. v. HP Pinnell, Trustee, 161 S.W.3d 233, 239 (Tex. App.-Corpus Christi 2005, no pet.). 
6. The validity of ordinance No. 657, which ultimately annexed the Pinnell property, is dependent
upon validity of the prior ordinances proceeding northward in a chain up through the Laguna Madre. The
first 5-mile ordinance in the chain, adjacent to the valid No. 625 on its east side, is No. 627. The first
in the chain of the later 1-mile re-annexation ordinances is No. 636. Both 627 and 636 are entirely in
the water. The next ordinance adjacent to No. 636 is No. 637; it is broken into two tracts, one to the
north and the other adjacent to the southeast corner of No. 636. Building off this southeast segment
of 637 is ordinance No. 656, which reaches across the balance of the Laguna Madre to annex the
southern tip of the Island. 
7. The special burden to PInnell was the potential imposition of a tax, and to SPI the
encroachment into its ETJ. See City of Port Isabel, 161 S.W.3d at 239. Since Pinnell and SPI
challenged CPI's authority to annex rather than just procedural irregularities, the ordinances were
potentially void rather than merely voidable, and Pinnell and SPI therefore had standing. Id. 
8. If an annexation is void because the city has no authority to annex, a collateral attack by
private parties is permissible. City of Port Isabel, 161 S.W.3d at 238 (citing Hoffman v. Elliot, 476
S.W.2d 845, 846 (Tex. 1972) (per curiam)). 
9. Private parties bringing a collateral attack on an annexation ordinance must have suffered some
burden peculiar to themselves. Hoffman, 476 S.W.2d at 846. 
10. The "law of the case" doctrine is defined as that principle under which questions of law
decided on appeal to a court of last resort will govern the case throughout its subsequent stages. 
Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003). Nevertheless, a decision rendered on
an issue before the appellate court does not absolutely bar re-consideration of the same issue on a
second appeal. Id. Application of the doctrine lies within the discretion of the court, depending on the
particular circumstances surrounding that case. Id.
11. We reject CPI's argument that City of West Lake Hills v. State ex. Rel. City of Austin, 466
S.W.2d 722, 727 (Tex. 1971) is applicable to the situation before us. We have already determined that
ordinance No. 657 imposed a burden on both Pinnell and SPI; that was not the situation in West Lake
Hills. Id. at 727-28. Because No. 657 did impose a burden (by pulling the Pinnell property into CPI's
city limits, and not just into its ETJ), Pinnell and SPI were entitled to challenge ordinances on which No.
657's validity depended. See City of Missouri City v. Senior, 583 S.W.2d 444, 446 (Tex. Civ.
App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). 
12. In 1963, the Municipal Annexation Act created the concept of extraterritorial jurisdiction and
forbade annexation by one city of land in the extraterritorial jurisdiction of another. See Municipal
Annexation Act, 58th Leg., R.S., ch. 160, § 3, 1963 Tex. Gen. Laws 447, 448 (current version at Tex.
Loc. Gov't Code Ann. § 41.021 (Vernon 1999)). 
13. Conclusion of Law No. 12.2.2. 
14. We also note that CPI frames its eleventh issue as error by the trial court in adopting
controlling adjacency as a means to give SPI standing to complain. However, CPI's argument in its brief
does not otherwise mention standing at all, and instead focuses on the validity and applicability of the
concept. 
15. See, e.g., City of Alton v. City of Mission, 164 S.W.3d 861, 867 n.4 (Tex. App.-Corpus
Christi 2005, pet. filed) (designated as opinion). 
16. We also note Conclusion of Law No. 10.2.1 of the trial court, finding the annexations to be
against public policy:


The simultaneous adoption of Ordinance Nos. 636 through 652 purporting to annex
more than 23,000 acres and purporting to result in a 15-mile extension of the municipal
boundaries of Port Isabel, a home rule city with an ETJ of no more than 1 mile, violated
the public policies underlying the orderly annexation and limitations set out in chapters
42 and 43 of the Texas Local Government Code and, therefore, said Ordinance Nos.
636 through 652 were and are void ab initio. 
17. We further note the Legislature clearly does know how to make specific provision for
annexation of submerged territory when it chooses to do so. For instance, a municipality may annex
a navigable stream that is "adjacent to the municipality and within the municipality's extraterritorial
jurisdiction." Tex. Loc. Gov't Code Ann. § 43.027 (Vernon 1999). A special-law municipality located
along or on a navigable stream may extend its boundaries to include an area composed of the navigable
stream and the land on each side of the stream for certain limited purposes, and may extend such
boundaries to include 2,500 feet in width on either side of the stream, not to exceed 20 miles in length. 
Tex. Loc. Gov't Code Ann. § 43.136 (Vernon 1999). See State ex rel. Pan Am. Prod. Co. v. Texas
City, 303 S.W.2d 780, 785 (Tex. 1975) (which involved the annexation of approximately 3,500 acres
of upland and some 2,000 acres of submerged land underlying the two bodies of water, all immediately
north of the existing city limits). That court also noted: "In City of Oak Cliff v. State ex rel Gill, 79
S.W. 1 [(Tex. 1904)], it is shown that the Legislature by special enactment extended the boundaries
of the City of Dallas so as to include a segment of the Trinity River, the underlying bed of which
belonged to the State of Texas as much so as the submerged lands along the Gulf Coast." Texas City,
303 S.W.2d at 785. Section 11.013 of the Texas Natural Resources Code provides that the gulfward
boundary of any city, town or village in Texas shall not be established or extended by incorporation or
annexation more than 5,280 feet gulfward. Tex. Nat'l Res. Code Ann. § 11.013 (Vernon 2001). In
each such instance of legislative enactment, proposed annexations are directly contiguous to land within
city limits, or incorporate strips of unsubmerged land contiguous to the city limits. 
18. Unchallenged fact findings are binding on the appellate court. Hotel Partners v. KPMG Peat
Marwick, 847 S.W.2d 630, 632 (Tex. App.-Dallas 1993, writ denied). 
19. The parties cite to City of Missouri City v. State of Texas ex rel. City of Alvin, 123 S.W.3d
606 (Tex. App.-Houston [14th Dist.] 2003, pet. denied), which involves interpretation of this same
statute. In that case, however, the ordinance did include the requisite contiguous 1,000 foot strip of
land. Id. at 609. The court's review of the statute's legislative history reflected concern that cities
would annex areas located a considerable distance from the principal area of the city, "'leap-frogging'
non-revenue producing areas to get to higher-valued suburbs, with the resulting creation of pockets of
low-income, poor infrastructure community." Id. at 616. Therefore, despite satisfying the requisite
1,000 foot connection, the ordinance was nevertheless void based upon section 43.0545. Id. (citing
Tex. Loc. Gov't Code Ann. § 43.0545 (Vernon Supp. 2006)). Similar concerns of "leap-frogging" have
been raised here, although the creation of pockets of low-income areas may not be likely where all
intervening territory is over water only. 
20. CPI also urges that section 43.0545 is inapplicable not only because the annexed areas are
properly contiguous, but also because, consistent with chapter 212, CPI's ETJ is actually five miles, and
they are within five miles of the incorporated areas that are on dry land. See Tex. Loc. Gov't Code Ann.
§ 212.001(1) (Vernon 1999). We have already rejected this argument. CPI next argues that section
43.902 of the local government code is an implicit authorization for annexation of lands on a gulf island
such as the Island. See Tex. Loc. Gov't Code Ann. § 43.902 (Vernon 1999). This statute provides that
(a) land on an island bordering the Gulf of Mexico that is not accessible by a public road or common
carrier ferry facility may not be annexed without the consent of the owners, (2) the ETJ of a
municipality does not include land on the island unless the owners of the land consent, and (3) such
property may not be taken through eminent domain. Id. A plain reading of the statutory language
reflects that it sets out limitations to annexation of land on an island and, whether or not those are
applicable here, the language in no manner expands the means by which territory may be lawfully
annexed. We therefore reject any reliance upon this statute to validate the ordinances in issue. See id. 
21. Finding of Fact No. 5.1.1 reflects: Each of Ordinance Nos. 636 through 651 contained
language which stated that "All ordinances or resolutions or parts of ordinances or resolutions
inconsistent or in conflict with the provisions of this Ordinance are hereby expressly repealed." This is
followed by Conclusion of Law 5.2.1: "The legal description of the areas purportedly annexed by
Ordinance Nos. 627, 628 and 633 [the 5-mile ordinances] were and are inconsistent or in conflict with
the legal descriptions of the areas purportedly annexed by Ordinance Nos. 636 through 651; and
therefore, even if Ordinance Nos. 636 through 651 had been valid, [the 5-mile ordinances] would have
been repealed by Section 7 of the subsequently adopted Ordinance Nos. 636 through 651." Findings
of Fact Nos. 7.1.1 through 7.1.34 sequentially address each of the re-annexation ordinances; see also
conclusions of law 7.2.1 through 7.2.17. 
22. CPI urges that if its surveyor could identify the property (regardless of whether or not he
described his bearing source on the individual property description), another surveyor should be able to
figure out CPI's intent, and in fact SPI and Pinnell surveyors could and did so when they identified
purported defects in the legal descriptions. SPI argues that, in addition to failing to identify bearing
sources, CPI did not adopt any maps as part of the ordinances as a means by which to locate any
territory. Therefore, we must depend solely upon its legal description, which is defective. 
23. This section provides for expansion of a municipality's ETJ beyond statutory distance
limitations to include an area contiguous to its otherwise existing ETJ, upon the request of the owners
of the area. Tex. Loc. Gov't Code Ann. § 42.022(b) (Vernon 1999).
24. Similarly, CPI's ETJ was never so extended; consequently, CPI's ETJ was not invaded and
no consent for such a purported invasion was required. 
25. We nevertheless note that the dispute as to whether a defect existed with respect to an
alleged gap in contiguity between SPI's ETJ and its proposed extension via ordinance No. 04-04 was
a question of fact for the trial court. Evidence included testimony of several SPI officials, including the
city secretary, that she had mixed up exhibits to two ordinances when forwarding copies of the
ordinance to CPI's counsel, and that the error was corrected when she forwarded ordinance No. 04-04
with the proper exhibit. SPI therefore argues no gap ever existed; rather there was simply a clerical error
in communications with opposing counsel. Appellate review of the trial court's findings of historical fact
is deferential because the trial court is in a better position to weigh credibility and make such
determinations. In re R.J.H., 79 S.W.3d 1, 6 (Tex. 2002). In applying the abuse of discretion standard,
reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in
its own factual review, but decides whether the record supports the trial court's resolution of factual
matters. State v. $217,590.00 in U. S. Currency, 18 S.W.3d 631, 633-34 (Tex. 2000); Goode v.
Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). The trier-of-fact, whether the trial court or the jury,
remains the sole judge of the credibility of the witnesses and the weight to give their testimony. City
of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005). It may choose to believe one witness and
disbelieve another, and a reviewing court cannot impose its own opinions to the contrary. Id. "A
reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls
within this zone of reasonable disagreement." Id. 
26. SPI relies upon Rowan v. Pickett, 237 S.W.2d 734, 739 (Tex. Civ. App.-San Antonio 1951,
no writ), which deals with misuse of county-owned road machinery by individual county commissioners
to maintain private roads and for soil conservation efforts other than as permitted by statute.
27. Overruled in part on other grounds, Alexander Oil Co. v. City of Seguin, 825 S.W.2d 434,
438 (Tex. 1991). 
28. Superseded by statute on other grounds, Assoc. Gen. Contractors v. City of El Paso, 879
S.W.2d 318, 319 (Tex. App.-El Paso 1994). 
29. In referring to CPI's repetitive efforts to annex additional territory, the findings might be
generously interpreted to imply that excessive additional litigation costs will be incurred in continuing
to battle what the trial court interprets to be vexatious and wrongful behavior. However, even if that
were the trial court's intent, we conclude that such costs do not constitute the requisite "irreparable
harm" as a matter of law. "Irreparable harm or injury" is defined to be that beyond the power of redress
by subsequent judicial proceedings. City of Houston v. Houston Gulf Coast Bldg. and Constr. Trades
Council, 597 S.W.2d 850, 852(Tex. App.-Houston [1st Dist.] 1985, no writ), superseded by statute
on other grounds, Assoc. Gen. Contractors, 879 S.W.2d at 319; A&A Constr. Co. v. City of Corpus
Christi, 527 S.W.2d 833, 835 (Tex. App.-Corpus Christi 1975, no writ). 
30. In doing so, we do not validate CPI's annexation efforts or sanction the continued and
repeated passage of ordinances which are void ab initio. 
31. During the hearing, the trial court stated:


If I were to grant attorneys' fees, I think one of the parties will not be entitled to it from
my point of view. I'm talking about your client [SPI]. . . . Because there was no need
for your client to come in actually. . . . I understand the reason they intervened and
became a party, but it was not a necessary party as far as I was concerned. . . . I'm
going to stop this litigation. I'm going to grant the attorneys' fees as requested by
Pinnell and the Town of South Padre. 
32. We have found that Pinnell and SPI had no standing to challenge ordinance No. 656. 
However, because the trial court correctly declared the ordinances, including Nos. 636 and 637 upon
which No. 656 depends, void ab initio, No. 656 is also necessarily void. Therefore, no modification of
the trial court's judgment as to this issue is required. 
33. Based on our conclusions, we need not determine whether "controlling adjacency" is
applicable or correctly applied in this case.