

## NUMBER 13-09-00246-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**RIO BRAVO SUBDIVISION PROPERTY OWNERS ASSOCIATION, ON BEHALF OF 203 QUALIFIED VOTERS IN THE RIO BRAVO SUBDIVISION AND THE SAID 203 QUALIFIED VOTERS,**         **Appellants,**

**v.**

**CITY OF BROWNSVILLE, TEXAS,**         **Appellee.**

---

### On appeal from the 107th District Court of Cameron County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Chief Justice Valdez**

In this appeal, appellants, Rio Bravo Subdivision Property Owners Association, on

behalf of 203 qualified voters in the Rio Bravo Subdivision, and the said 203 qualified

voters[1] (collectively referred to as "Rio Bravo"), complain about a summary judgment granted in favor of appellee, the City of Brownsville (the "City"), which denied Rio Bravo relief pertaining to its petition for disannexation and declaratory relief brought under section 43.141 of the local government code. *See* TEX. LOC. GOV'T CODE ANN. § 43.141 (Vernon 2008). By two issues, which we construe as one, Rio Bravo contends that the trial court erred in granting the City's motion for summary judgment because the City acted in bad faith by failing to provide "additional or new services" to Rio Bravo after annexation. We affirm.

## I. BACKGROUND

On November 5, 2002, the City annexed the Rio Bravo Subdivision. In 2005, a majority of the registered voters residing in the subdivision filed a petition for disannexation

---

[1] Only 156 voters are identified in the record. The 156 voters are identified as: James E. Regan; Margie Jane Regan; Norman Elwood Kight; Russell Leibundgut; Charles A. Morgan, Jr.; Zonda Ione Morgan; Joseph John O'Mara; Ronald J. Herfindahl; Gerald D. Short; Marilyn J. Short; Paul J. Slenk; Thomas D. Heuerman; Karen L Heuerman; George W. Whitaker; Donis Ilene Whitaker; Keith E. Bell; Edwad J. Rademacher; Magdalen Rademacher; Patricia Jane Fry; James D. Payne; Ron G. Brown; Bruce A. Watts; William M. Moline; Joan M. Moline; Bobby G. Wood; Altonette L. Wood; Teresa Barton Holloway; Marvin D. Basye; Pamela S. Basye; Joan Lorene Robinson; Gail E. Peterson; William C. Cronin; Shanon K. Cronin; John Alden Coleman; Thomas M. Fowler; Janet Jean Stowe; Edward F. Bares; Gail C. Bares; Dale R. Fields; Mary Ellen Fields; Robert D. Roberts; Winfred Riddle; Charles E. Stowe. Jr.; Russell R. Zimmerman; John H. Meyers; Jutta E. Doersam; Donald L. Shafer; Roxann Shafer; Alan Thoms James; Joseph E. Travis; Janice M Travis; Thomas C. Hartman; Helen A. James; Gene E. Mehrtens; Elizabeth A. Mehrtens; Donald E. Holmes; Mary C. Holmes; Jose Alvarez, Jr.; Roberta D. Alvarez; Gerald P. Olsen; Genevieve D. Olsen; Dean I. Moon; Colleen A. Moon; Elroy G. Meyer; Beata R. Meyer; James E. Link; Norma J. Link; Karl H. Coleman; Priscilla A. Coleman; Willis G. Apt; Anne M. Apt; David M. Scott; Patricia J. Scott; Richard L. Menard; Shirley C. Menard; John R. Mapel; Ronald W. Johnson; Jack E. Davis; Betty R. Henning; Robert L. Nowak; Maxine J. Nowak; Douglas R. Keene; Betty Keene; Stanley G. Coates; Mary A. Beard; Lawrence B. Schmitt; Joanne M. Meyers; Aloysius Meyers; Tyler D. Collins; Hazel Leanita Coleman; Luther L. Watson; Glenda K. Berger; Ann Williams Shepperd; Benny M. Berger; Doris Irene George; John Lloyd George; Juanita Vaughan; Allen John Freund; Anita Lenore Freund; Imogene Morgan; August E. Morgan; John Arthur Winn; Helen Catherine Winn; Joel Zapata; Marlys Zapata; Ellen Kathleen Anderson; Lester D. Cowger; Patricia Ann Cowger; Ray Edward Church; Betty Jo Johnson; Earl George Sneath; Alice Marie Sneath; J. Robert Buckley; Beverly W. Buckley; Glen Mullikin; Mary Ann Watson; Fred Charles Mottson; Ellen Marie Elfrank; Dale Colberg; Robert Mitchell Aman; James Burcham; Laura Ann Osgood; Elda M. Corbit; Edward Allan Zeppelin; Richard Grant Peterson; Francis Duane Richman; Mary Alice Zimmermann; Ira F. Watkins; Jackie Newell Bearrow; Barbara Idelle Bearrow; Jan A Pausewang; Irene T. Zeppelin; David C. Odle; Allison Odle; Raymond James Kirk; Lois Harriet Kirk; Dale Eugene Stevens; Nancy Lee Stevens; Herbert D. Campbell; Melvin Eugene Hammond; Dianne Lynn Hammond; Maurice D. Miller; Sara W. Miller; Gerald R. Crisp; Alice Lorraine Crisp; Leonard Vihorio Gionnetti; Richard Ray May; Julie A. May; Frederick Dwight Stephens; Barbara J. Stephens; Bobby Gene Taylor; Burrell L. Walters, Jr.; John Thomas Head; and Nadine Hargraves.

with the City alleging that the City failed to provide services to the subdivision. *See id.* § 43.141(a). The City failed to act upon Rio Bravo's petition for disannexation within sixty days after having received it; thus, Rio Bravo petitioned the local district court to request that the subdivision be disannexed. *See id.* § 43.141(b) (providing that "[i]f the governing body fails or refuses to disannex the area within 60 days after the date of the receipt of the petition, any one or more of the signers of the petition may bring a cause of action in district court . . .."). This petition alleged that the City failed to provide services and acted in bad faith because "the City failed to provide additional or new services to the annexed area . . . ." The petition sought, in part, a judgment "[d]eclaring that under the said Petition and/or Section 43.141 of the Texas Local Government Code, Rio Bravo is entitled to the disannexation of the said area . . . ."

On September 26, 2006, Rio Bravo filed a motion for summary judgment. On January 24, 2007, the City filed a competing motion entitled "Supplemental Motion for Summary Judgment or in the Alternative, Plea to the Jurisdiction." The trial court subsequently denied the City's plea to the jurisdiction on governmental immunity grounds. On interlocutory appeal, this Court affirmed the trial court's order. *City of Brownsville v. Rio Bravo Subdivision Prop. Owners Assoc.*, No. 13-07-554-CV, 2008 WL 384371, at **3-4 (Tex. App.–Corpus Christi Feb. 14, 2008, no pet.) (mem. op.).

On January 9, 2009, both parties appeared for jury trial; however, after "announcements," attorneys from both parties met in chambers with the trial court judge to discuss various pre-trial motions. Stipulations, signed on February 6, 2009 by both parties, were entered into evidence and considered by the trial court. The parties stipulated, in pertinent part:

3) [Rio Bravo] stipulate[s] that the City . . . complied with all procedural steps for municipal annexation . . . . [Rio Bravo] do[es] not challenge the legality of said annexation.

4) Municipal disannexation is being sought by [Rio Bravo] solely pursuant to [Texas Local Government Code section] 43.141 for failure to provide additional or new municipal services to the Rio Bravo Subdivision.

. . . .

12) [Rio Bravo] timely filed this suit for disannexation for failure to provide additional or new municipal services under [Texas Local Government Code section] 43.141 . . . . [Rio Bravo] do[es] not contend in this petition that [the City] failed to provide services as set forth in the municipal service plan, but rather that the City could not provide them services which were new or different than that which they were already receiving before municipal annexation. The City contends that they fully complied with the service plan and met their legal obligations to provide municipal services to the annexed area.

. . . .

14) The annexed area in question falls within an area served by a certificate of convenience and necessity by the TCEQ (Texas Commission for Environmental Quality) to the Valley MUD No. 2 for sewer and water. Those utilities have not granted permission to [the City] to provide water or sewer utilities within the areas to which they hold the exclusive Certificates of Convenience and Necessity. This legally prohibits the City from providing water and sewer utilities in these areas.

. . . .

17) [Rio Bravo] stipulate[s] that the City did provide certain municipal services after annexation (as set forth in this stipulation), and that the services which were provided (again, as set forth in this stipulation) were provided within the time frames set forth by the municipal service plan and as specified by [Texas Local Government Code section] 43.056 . . . .

The parties stipulated that the following entities would provide municipal services:

| | Before Annexation | After Annexation |
| --- | --- | --- |

4

| Police | Cameron County Sheriff's Office | City of Brownsville Police Department |
|---|---|---|
| Fire | City of Brownsville Fire Department under an interlocal agreement with Cameron County Emergency Services District No. One. | City of Brownsville Fire Department |
| Emergency Medical Services | City of Brownsville Fire Department under an interlocal agreement with Cameron County Emergency Services District No. One. | City of Brownsville Fire Department |
| Solid Waste Collection | Privately contracted through the County | City of Brownsville through a private contractor paid for by the City |
| Operation and Maintenance of Water and Sewer Utilities | Valley Municipal Utility District No. 2 under a Certificate of Convenience and Necessity issued by TCEQ | Valley Municipal Utility District No. 2 under a Certificate of Convenience and Necessity issued by TCEQ |
| Maintenance of Public Roads and streets including road and street lighting | The State of Texas maintains all state roads.<br><br>Cameron County, Texas maintains all other public roads.<br><br>Rio Bravo maintains some purely private drives which are not public streets and which have never been dedicated to public use. | The State of Texas maintains all state roads.<br><br>The City of Brownsville maintains all public streets, roads, and roadways.<br><br>Rio Bravo maintains some purely private drives which are not public streets and which have never been dedicated to public use. |
| Operation and maintenance of any other public service | Cameron County | City of Brownsville |

In light of the above stipulations, the trial court determined that there was no genuine issue of material fact and granted the City's motion for summary judgment while simultaneously denying Rio Bravo's competing motion for summary judgment. This appeal ensued.

## II. STANDARD OF REVIEW

The standards of review under which we review traditional and no-evidence motions for summary judgment are distinct; therefore, we must determine the type of summary judgment at issue. *See Circle X Land and Cattle Co., Ltd. v. Mumford Indep. Sch. Dist.*, No. 14-09-00330-CV, 2010 WL 3409597, at *2 (Tex. App.–Houston [14th Dist.] Aug. 31, 2010, no. pet. h.). In the present case, Rio Bravo's appellate briefing neither states the applicable standard of review nor indicates whether the motion for summary judgment being appealed is a traditional, no-evidence, or hybrid motion. *See* TEX. R. CIV. P. 166a(c) (providing that in a traditional motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law), 166a(i) (setting out that in a no-evidence motion for summary judgment, a party may move for summary judgment without presenting summary judgment evidence "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial"); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (explaining that when a party moves for summary judgment under both rules 166a(c) and 166a(i), "[we] first review the trial court's summary judgment under the standards of rule 166a(i)").

The City's motion for summary judgment states that it is filed pursuant to Texas Rule

6

of Civil Procedure "166a and 166(i)."[2]   A traditional motion for summary judgment is granted where the movant shows that "there is no genuine issue of material fact" and that he is "entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response."  TEX. R. CIV. P. 166a(c).  The City's motion for summary judgment mentions that there is "no evidence" that the City failed to comply with the service plan prepared for Rio Bravo; however, the arguments raised within the motion do not advance this contention and instead, focus on proving that there is no genuine issue of material fact and that the City is entitled to judgment as a matter of law.[3]  Moreover, after considering the stipulations, the trial court expressly found in its order granting final summary judgment that "there is no genuine issue as to any material fact in this case" and that the City "is entitled to summary judgment (in its favor) as a matter of law on the issues raised by the pleadings in this case."   Accordingly, we construe the City's summary judgment motion to be a traditional motion.  *See id.*

We review a summary judgment de novo.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).   The evidence is reviewed in the light most favorable to the non-movant, and the moving party bears the burden of proof of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *see Fielding*, 289 S.W.3d at 848; *see also Branton*,

---

[2] We note that Rule 166(i) does not pertain to summary judgments.  *See* TEX. R. CIV. P. 166(i) (providing that the trial court may direct the attorneys for the parties to appear before it for a conference to consider the exchange of a list of expert witnesses who the parties will call to testify at trial).  Presumably, the City intended to cite Texas Rule of Civil Procedure 166a(c) and 166a(i).  *See id.* at R. 166a(c), (i).

[3] The City's motion for summary judgment states, "This Motion is filed as . . . a Motion for Summary Judgment, pursuant to TRCP 166(a). . . . [T]he Defendant would show that there is no issue of material fact, and this Defendant is entitled to judgment as a matter of law."

7

100 S.W.3d at 646. When both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000); *see also Netrana, L.L.C. v. TXU Bus. Servs. Co.*, No. 13-08-00264-CV, 2009 WL 3766575, at *3 (Tex. App.–Corpus Christi Nov. 12, 2009, no pet.) (mem. op.).

Statutory construction is a legal question that we review de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *City of Port Isabel v. Pinnell*, 207 S.W.3d 394, 409 (Tex. App.–Corpus Christi 2006, no pet.). Our primary objective in statutory construction is to give effect to the legislature's intent. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we first look to the plain language of the statute. *See id.* "Where text is clear, text is determinative of that intent" unless enforcing the plain language would produce absurd results. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437. We read the statute as a whole and give meaning to the language that is consistent with other provisions in the statute. *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 872-73 (Tex. 2005); *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We read every word in a statute as if it were deliberately chosen and presume that words excluded from the statute are done so purposefully. *See Cameron v. Terrell & Grant, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *Pinnell*, 207 S.W.3d at 409. "Only when it is necessary to give effect to the clear legislative intent may we insert additional words or requirements into a statutory provision." *Pinnell*, 207 S.W.3d at 409.

### III. APPLICABLE LAW

Under Texas Local Government Code section 43.141(a), a majority of the qualified voters of an annexed area may petition the governing body of the municipality for disannexation for the municipality's failure or refusal to provide services. *See* TEX. LOC. GOV'T CODE ANN. § 43.141(a).

> If the governing body fails or refuses to disannex the area within 60 days after the date of the receipt of the petition, any one or more of the signers of the petition may bring a cause of action in a district court of the county in which the area is principally located to request that the area be disannexed. . . . The district court shall enter an order disannexing the area if the court finds that a valid petition was filed with the municipality and that the municipality failed to perform its obligations in accordance with the service plan or failed to perform in good faith.

*Id.* § 43.141(b).

## IV. ANALYSIS

Rio Bravo contends that the trial court erred in granting the City's motion for summary judgment because the City "failed to perform in 'good faith,'" as required by section 43.141(b), by failing to provide "additional or new services" to Rio Bravo after annexation. *See id.* We disagree.

A district court must enter an order of disannexation if the court finds that: (1) a valid petition was filed with the municipality; and (2) the municipality . . . failed to perform in good faith. *See id.* This Court has previously determined that Rio Bravo's petition for disannexation was valid.[4] *See Rio Bravo Subdivision Prop. Owners Assoc.*, 2008 WL

___

[4] A petition is valid if: "(1) a majority of qualified voters of the annexed area . . . have filed a petition with the city alleging a failure to provide services within the applicable time period; and (2) sixty days . . . have passed since the city received the petition." *City of Brownsville v. Rio Bravo Subdivision Prop. Owners Assoc.*, No. 13-07-554-CV, 2008 WL 384371, at *3 (Tex. App.–Corpus Christi Feb. 14, 2008, no pet.) (mem. op.) (citing TEX. LOC. GOV'T CODE ANN. § 43.141). Both parties stipulated that "On January 28, 2005, [Rio Bravo] delivered to the City of a Petition for Disannexation for failure to provide new or additional services, signed by the majority of the qualified voters in the annexed area as provided for in [Texas Local Government Code section] 43.141 . . . ." Moreover, the parties agreed that Rio Bravo "complied with all (statutory) procedural prerequisites to the filing of [the suit for disannexation]."

9

384371, at *3. Rio Bravo supports its contention that the City failed to perform in good faith by citing the language of section 43.141(a), as well as various case law setting forth the general tenets of statutory construction. *See* TEX. LOC. GOV'T CODE ANN. § 43.141(a). Specifically, Rio Bravo asserts that a municipality fails to perform in good faith where it "fails or refuses to provide services or to cause services to be provided to the [annexed] area . . . ." *Id.* Thus, we must determine whether the trial court erred by determining that the City did not fail or refuse to provide services to Rio Bravo. *See id.*

The plain language of 43.141(a) allows disannexation where a municipality "fails or refuses to provide services" to an annexed area. *See id.*; *see also Shumake*, 199 S.W.3d at 284. Rio Bravo stipulated that the City provided certain municipal services after annexation and that the City provided every type of municipal service that it was legally allowed to provide. Despite these stipulations, Rio Bravo argues that the City failed to provide services in good faith because it failed to provide "*any* additional or new services to the Rio Bravo Subdivision that the subdivision did not already receive *prior* to the annexation." (Emphasis in original.)

Nothing in the plain language of the statute indicates that a municipality must provide new or additional services to an annexed area. *See* TEX. LOC. GOV'T CODE ANN. § 43.141(a). Moreover, Rio Bravo does not contend, and we do not conclude, that enforcing the plain language of section 43.141 would lead to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437. Although Rio Bravo asserts that we may consider "the (1) object sought to be attained, (2) circumstances under which the statute was enacted, (3) legislative history, (4) common law or former statutory provisions including laws on the same or similar subjects, (5) consequences of a particular construction, (6)

10

administrative construction of the statute, and (7) title (caption), preamble, and emergency provision," to determine the legislative intent, Rio Bravo provides no argument advancing any of these factors. Because we read every word in a statute as if it were deliberately chosen and presume that words excluded from the statute are done so purposefully, *see Cameron v. Terrell & Grant, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *Pinnell*, 207 S.W.3d at 409, we do not interpret "fails or refuses to provide services" to mean "fails or refuses to provide *additional or new* services." *See Pinnell*, 207 S.W.3d at 409 (providing that we do not "insert additional words or requirements into a statutory provision" unless the insertion is necessary "to give effect to the clear legislative intent"). Thus, Rio Bravo's argument that section 43.141 allows for disannexation because the City failed to provide new or additional services is meritless. Accordingly, the trial court did not err in determining that the City was entitled to summary judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Fielding*, 289 S.W.3d at 848. We overrule Rio Bravo's sole issue on appeal.

## V. CONCLUSION

We affirm the judgment of the trial court.

_____

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
7th day of October, 2010.

11